**[J-10-2015]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.**

| | | |
|---|---|---|
| ROBERT SCHANNE, | : | No. 106 MAP 2014 |
| | : | |
| Appellant | : | Appeal from the U.S. Court of Appeals, |
| | : | Third Circuit No. 12-4044 |
| v. | : | |
| | : | |
| | : | |
| JENNA ADDIS, | : | |
| | : | |
| Appellee | : | ARGUED:  March 10, 2015 |

**OPINION**

**MR. CHIEF JUSTICE SAYLOR**                    **DECIDED:  August 17, 2015**

We granted the Third Circuit's petition for certification in this defamation case. The question is whether the judicial privilege extends to an allegation made concerning a school teacher by a former student, where the allegation was made before quasi-judicial proceedings were commenced and without any intent that it lead to such proceedings.

Robert Schanne taught physics at Lower Merion High School in Ardmore, Pennsylvania from September 1997 through December 2010.  Jenna Addis was his student during her junior and senior years, from 2001 until her graduation in 2003.  After Addis graduated, she attended Tulane University in New Orleans, where she still resides.

In late November 2010, Addis (then age 26) was visiting Pennsylvania for the Thanksgiving weekend.  During her visit, Addis spoke to Susan O'Bannon, a friend who was employed by Lower Merion High School.  Addis told O'Bannon that she and

Schanne had been romantically involved while Addis was a high school senior and during the summer after she graduated. O'Bannon reported Addis's allegation to school officials. Addis testified in her deposition that she discussed the matter with O'Bannon as a friend and not as an agent of the school. Addis stated, moreover, that she did not intend for O'Bannon to report the information to the school, that she was not aware O'Bannon would feel obligated to make such a report, and that she was surprised to learn that O'Bannon had done so. *See* N.T., Dec. 1, 2001, at 137, 141.

Upon hearing the allegations, school officials called Addis in New Orleans to investigate the matter further. They made two such calls in early December 2010 and memorialized the content of the conversations in papers which they sent to Addis for her correction and signature. The federal district court described these papers as Addis's official statement to the school concerning her relationship with Schanne.

According to the statement, while Addis was a high school senior, she developed an emotional attachment to Schanne and the two would sometimes eat lunch together in a workroom connected to the main physics classroom. For a period of four to six weeks in the fall of 2002, Schanne assisted Addis in preparing for the SAT physics exam by tutoring her at her home. During this time, the pair developed a relationship that included a physical component, albeit they did not have intercourse until Addis graduated. After Addis moved to New Orleans for college, she and Schanne kept in touch and would have intimate relations whenever Addis was in Pennsylvania for holidays, although they were "not a couple anymore." Statement at 3. At some point, however, Addis began to believe her high school involvement with Schanne was interfering with her ability to have healthy relationships with others, and she wanted Schanne to admit that his conduct had been inappropriate. She sent him an email to this effect, but was disappointed when Schanne responded by stating there was nothing

improper about their relationship. During Addis's November 2010 visit to Pennsylvania, she met Schanne at a bookstore and repeated her concerns, but he again maintained that their relationship "wasn't wrong." Statement at 4.

Based on Addis's statement, school officials provided Schanne with a pre-termination *Loudermill* hearing as required by due process. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 1493 (1985). Shortly thereafter, Schanne was suspended. Schanne refused to attend a follow-up hearing in January 2011, and the school district terminated his employment later that month.

Schanne filed a defamation action against Addis directed to the federal court's diversity jurisdiction. In his amended complaint, Schanne alleged that his romantic involvement with Addis did not begin until after she graduated from high school, and that any contrary assertions by Addis were false and made with malice due to Addis's jealousy over Schanne's relationship with another woman. Schanne averred that Addis's statements were not judicially privileged because: they were not made during a school board meeting, hearing, or other judicial or quasi-judicial proceeding; no judicial or quasi-judicial proceeding regarding Schanne was "convened or contemplated" at the time Addis made her allegations; and no other privilege applied to the statements. Amended Complaint, ¶28.

Addis filed a motion for summary judgment which the federal court granted on the basis that all of her assertions were protected by the judicial privilege. *See Schanne v. Addis*, 898 F. Supp. 2d 751 (E.D. Pa. 2012). In reaching this conclusion, the court reviewed state court decisions it construed as holding that statements published prior to or during judicial proceedings which relate to those proceedings are privileged. *See, e.g., Post v. Mendel*, 510 Pa. 213, 220, 507 A.2d 351, 355 (1986); *Binder v. Triangle Publ'ns, Inc.*, 442 Pa. 319, 323, 275 A.2d 53, 56 (1971). Referencing *Milliner v. Enck*,

709 A.2d 417 (Pa. Super. 1998), the court expressed that the privilege also applies in relation to quasi-judicial proceedings. *See id.* at 419 n.1. The court observed, moreover, that Schanne admitted in his pleadings that the school's pre-termination *Loudermill* hearing constituted a quasi-judicial proceeding, and that he conceded at oral argument that the material in Addis's statement to school officials was pertinent to that proceeding. *See Schanne*, 898 F. Supp. 2d at 755-56. Thus, according to the court, the sole issue was whether Addis's initial allegation to O'Bannon was "pertinent and material" to the *Loudermill* hearing. In addressing the issue, the court reasoned:

> Courts must also consider whether applying an absolute privilege in a given case would promote the privilege's purpose. The purpose of the privilege is "to afford [parties] freedom of access to the courts," to "encourage [witnesses'] complete and unintimidated testimony in court," and "to enable [counsel] to best represent his client's interests." *Binder*, 275 A.2d at 56. If not for this privilege, "a realm of communication essential to the exploration of legal claims [ ] would be hindered . . .." *Post v. Mendel*, 507 A.2d at 355. In this case, protecting Addis' statement furthers the purpose of the privilege.

*Id.* at 757 (alterations in original). Particularly since the declaration to O'Bannon had "served as the catalyst" for the *Loudermill* hearing, *id.*, the court determined that the privilege applied to that statement. *See id.* at 758.

On appeal, Schanne argued that Addis's statement to O'Bannon was not made in the regular course of a judicial action, because Addis had gone to O'Bannon as a friend and did not contemplate possible judicial or quasi-judicial proceedings. Addis responded that her intent in communicating with O'Bannon was irrelevant and that, because it resulted in quasi-judicial proceedings, it was privileged as a preliminary communication. After the matter was briefed and argued before the Third Circuit Court of Appeals, that tribunal certified the following question for our resolution:

> Does the absolute judicial privilege apply to an allegation of sexual misconduct against a teacher by a former student, which allegation was

made prior to the commencement of any quasi-judicial proceeding and without an intent that the allegation lead to a quasi-judicial proceeding?

*Schanne v. Addis*, ___ Pa. ___, 99 A.3d 527 (2014) (per curiam).

Presently, Schanne argues that for immunity to attach there must be judicial or quasi-judicial proceedings to which the disputed statement is connected. Here, Schanne notes, Addis made her allegation to O'Bannon before any proceedings were initiated and without any intention or expectation that O'Bannon would report the information to the school. Schanne contends that extending the privilege in these circumstances would not only fail to serve its purpose, it would also permit an individual who makes a defamatory communication to a third party to later "engineer a privilege" by persuading the third party to file a complaint based on the communication. Brief for Appellant at 16. Schanne urges, in this respect, that the privileged status of a statement should not depend solely on the subsequent actions of a third party – particularly because, in his view, a statement is "either privileged when made or it is not[.]" *Id*.

Addis responds, initially, by arguing that, because litigation is expensive and time consuming, this Court should hold that a declarant's intent in making an allegedly defamatory statement is irrelevant to the question of privilege so that the declarant will not have to litigate the issue. She claims a contrary holding would allow a defamation plaintiff to impose undue litigation expenses upon a defendant whenever the latter claims the judicial privilege. Separately, Addis suggests that there is a broad spectrum of possible consequences to a declaration made regarding a teacher in Schanne's position, from a private meeting with school officials which leads to an informal warning, to quasi-judicial proceedings which result in the teacher's discharge from employment. Hence, she proffers that focusing on the declarant's intent would be unworkable because it would be unclear where along that spectrum of intended outcomes the privilege should attach.

Addis continues that extending immunity in the present circumstances would be consistent with the judicial privilege's underlying policy – as articulated in decisions such as *Post* and *Binder* – of ensuring access to the courts for all persons who wish to assert a legal claim regardless of the merits of that claim. She notes, in this regard, that, once it is determined that immunity attaches, the individual is shielded from liability regardless of intent; thus, she urges that we reject Schanne's argument that the privilege does not apply in the first instance due to her lack of intent that the declaration to O'Bannon would lead to judicial or quasi-judicial proceedings. Relatedly, Addis urges that a privilege attaches, if at all, as a matter of law – and thus, a speaker's intent as to whether it should attach is irrelevant.

A group of non-profit organizations have submitted a joint *amicus* brief emphasizing that it is in the public interest for schoolchildren to be protected from sexual harassment and sexual assault by school employees. *Amici* suggest that, because this type of victimization is underreported, extending the judicial privilege to Addis's initial communication to O'Bannon would be salutary insofar as it would allow students to report incidents of sexual misconduct without fear of retaliation.

Pennsylvania law closely guards the ability of a person whose reputation has been injured by defamatory statements to obtain redress for such injury.[1] In *American Future Systems v. Better Business Bureau*, 592 Pa. 66, 923 A.2d 389 (2007), the Court explained that the Pennsylvania Constitution "places reputational interests on the highest plane, that is, on the same level as those pertaining to life, liberty, and property." *Id.* at 77 n.7, 923 A.2d at 395 n.7; *see* PA. CONST. art. I §1 ("All men . . . have certain

---

[1] While reputational harm in isolation may appear abstract, such injury can be the occasion for more concrete harms such as termination from employment, loss of opportunities, or adverse actions in relation to custody or visitation rights. *See, e.g., Silberg v. Anderson*, 786 P.2d 365, 368 (Cal. 1990).

inherent and indefeasible rights, among which are those of enjoying and defending . . . reputation . . ..”); *id.* §11 (“[E]very man for an injury done him in his . . . reputation shall have remedy by due course of law . . ..”); *see also Norton v. Glenn*, 580 Pa. 212, 225-26, 860 A.2d 48, 56 (2004) (“The right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being . . ..” (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 22, 110 S. Ct. 2695, 2708 (1990))). *See generally Rosenblatt v. Baer*, 383 U.S. 75, 86, 86 S. Ct. 669, 676 (1966) (recognizing that “[s]ociety has a pervasive and strong interest in preventing and redressing attacks upon reputation”).

At the same time, there is a fundamental societal need for justice to be administered freely and efficiently through the eliciting of speech from parties and witnesses that may be accusatory or otherwise reflect negatively upon another's character. Thus, notwithstanding any reputational harm that may ensue, Pennsylvania, like many other jurisdictions, recognizes a judicial privilege providing immunity for communications which are made in the regular course of judicial proceedings and are material to the relief sought. *See Bochetto v. Gibson*, 580 Pa. 245, 251, 860 A.2d 67, 71 (2004).[2] The privilege covers statements by a party, a witness, an attorney, or a judge. *See Binder*, 442 Pa. at 323, 275 A.2d at 56. Furthermore, the privilege is

---

[2] It is beyond the scope of this appeal to inquire whether the school's procedures qualified as judicial proceedings – or, assuming they were “quasi-judicial proceedings,” whether the privilege applies as to that category of official action. In its certification petition the federal appellate court assumed the privilege *could* apply to the school district's proceedings, and the question posed rests on that assumption. Therefore, we also will continue under the same assumption. *Cf. Mitchell Partners, L.P. v. Irex Corp.*, 617 Pa. 423, 437 & n.7, 53 A.3d 39, 47-48 & n.7 (2012) (reaching a legal determination on a certified question, but declining to comment further on its application in the underlying federal action).

absolute, meaning that, where it attaches, the declarant's intent is immaterial even if the statement is false and made with malice. *See Bochetto,* 580 Pa. at 251 n.12, 860 A.2d at 71 n.12.[3]

The judicial privilege serves an essential function in guaranteeing access to the courts and permitting the free articulation and resolution of legal claims. *See Post*, 510 Pa. at 221, 507 A.2d at 355 (observing that "the privilege exists because there is a realm of communication essential to the exploration of legal claims that would [otherwise] be hindered"). Hence, its purpose is to allow participants in judicial proceedings to speak freely without fear of civil liability. As *Binder* explained:

> The reasons for the absolute privilege are well recognized. A judge must be free to administer the law without fear of consequences. This independence would be impaired were he to be in daily apprehension of defamation suits. The privilege is also extended to parties to afford freedom of access to the courts, to witnesses to encourage their complete and unintimidated testimony in court, and to counsel to enable him to best represent his client's interests.

*Binder*, 442 Pa. at 323-24, 275 A.2d at 56 (citing, *inter alia*, William Prosser, TORTS §109 (3d ed. 1964)).

In view of the broad policy objectives reflected above, the judicial privilege is not limited to statements made in open court, but encompasses pleadings as well. *See Greenberg v. Aetna Ins. Co.*, 427 Pa. 511, 514, 235 A.2d 576, 577 (1967). The Superior Court has extended the privilege further to "even less formal communications such as preliminary conferences and correspondence between counsel in furtherance of the client's interest," *Pawlowski v. Smorto*, 403 Pa. Super. 71, 81, 588 A.2d 36, 41

---

[3] An absolute privilege is unlike a qualified privilege in that the latter does not protect the declarant against a charge of malice, *see Preiser v. Rosenzweig*, 538 Pa. 139, 145, 646 A.2d 1166, 1169 (1994), and can be lost through abuse of the privilege "such as overly embellishing an account of a proceeding." *Binder*, 442 Pa. at 324, 275 A.2d at 56.

(1991), as well as to statements made to law enforcement officials for the purpose of persuading those officials to initiate criminal proceedings. *See id.* at 84, 588 A.2d at 43; *cf. Adams v. Peck*, 415 A.2d 292, 294 (Md. 1980) (expressing that the privilege should extend to potentially defamatory statements published in documents which are prepared for possible use in connection with a pending judicial proceeding but which have not yet been filed). The Second Restatement of Torts is of this view:

> A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding.

RESTATEMENT (SECOND) OF TORTS §588 (1977); *see also id.* §587 (reflecting a parallel provision applicable to parties).

As illustrated by the foregoing, the scope of the judicial privilege has been gradually extended over time as courts, scholars, and practitioners have taken into account its usefulness in a variety of scenarios connected with the sound administration of justice as that term is broadly understood. The contours of the privilege, moreover, have been shaped by a case-by-case evaluation of whether its application in specific circumstances is needed to advance its underlying policy objectives.

Notably, in this regard, courts have also referenced such policy considerations to limit application of the privilege in certain instances where those considerations would not be implicated. For example, the *Binder* Court held that the judicial privilege "does not apply to newspaper accounts of judicial proceedings, for none of the policy considerations noted above are applicable to a news story." *Binder*, 442 Pa. at 324, 275 A.2d at 56. Likewise, *Post* concluded that the judicial privilege did not apply to a letter sent by an attorney to opposing counsel – with copies to the judge, the

Disciplinary Board of this Court, and opposing counsel's client – accusing counsel of unethical behavior during the course of an ongoing trial. The *Post* Court observed:

> The essential realm of protected communication is not . . . without bounds. Rather, the protected realm has traditionally been regarded as composed only of those communications which are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought.

*Post*, 510 Pa. at 221, 507 A.2d at 355 (emphasis removed). While the letter, in one sense, pertained to the trial, it was immaterial to the relief sought or to the legal claims raised in that proceeding. *See id.* at 223-24, 507 A.2d at 356-57.

*Bochetto* provides another example along these lines. In that matter, a private club commenced a malpractice action against its former lawyer. The club's new attorney filed the complaint and then transmitted a copy of it to the news media. This Court noted that the filing of the complaint was privileged since it occurred in the regular course of judicial proceedings and was material to those proceedings. *See Bochetto*, 580 Pa. at 252, 860 A.2d at 72. However, its republication to the media was held not to be privileged, as it was an extrajudicial act that occurred outside of the regular course of the proceedings and lacked relevancy to the proceedings. Thus, giving privileged status to the republication would not advance the privilege's underlying policy aims. *See id.* at 253, 860 A.2d at 73; *see also Barto v. Felix*, 250 Pa. Super. 262, 267-68, 378 A.2d 927, 930 (1977) (concluding that, although allegations in an attorney's brief were protected by the judicial privilege, the attorney's remarks about the contents of the brief during a press conference were not likewise protected).

Overall, then, while the judicial privilege has expanded with the needs of justice, it has also been made subject to limitations where the administration of justice is not likely to be substantially affected. *See Adams*, 415 A.2d at 294 ("The question whether a defamatory statement should be absolutely privileged involves a matter of public

policy in which the public interest in free disclosure must be weighed against the harm to individuals who may be defamed."). Absent such limitations, the constitutionally-guaranteed right to recover for reputational injuries would be unduly constrained. *See generally Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 698 (8th Cir. 1979) (cautioning that absolute immunity should not be "lightly conferred" as to preliminary statements); *Brown v. Collins*, 402 F.2d 209, 213 (D.C. Cir. 1968) (same).

We turn now to an evaluation of whether the policy concerns which underlie the judicial privilege are implicated by the circumstances as delineated by the Third Circuit. Perhaps the most salient aspect of the issue as framed is that, not only was the allegation made before the commencement of proceedings, it was made "without an intent that [it] lead to a quasi-judicial proceeding." Certification Petition at 7; *Schanne v. Addis*, ___ Pa. at ___, 99 A.3d at 527. As reflected in the certification petition and the record, Addis spoke to O'Bannon only as a friend and with no desire or expectation that the allegation she made against Schanne would result in proceedings of any type. This is relevant because the judicial privilege operates by incentivizing individuals to speak freely within a judicial (or quasi-judicial) context – or more to the point here, to speak freely in *seeking to initiate* judicial or quasi-judicial proceedings. Where a declarant has no intention of initiating proceedings or otherwise obtaining a remedy, clothing his or her statement with immunity cannot serve this goal. Assuming the declaration is otherwise actionable, then, protecting it under the cloak of the judicial privilege would do little to advance the privilege's objectives, while undermining the plaintiff's right to obtain recompense for any injury to his or her reputation.[4]

---

[4] In this regard, we do not endorse the district court's "served as the catalyst for a hearing" standard. *Schanne*, 898 F. Supp. 2d at 757. Such a test shifts the focus from whether application of the privilege would promote the efficient administration of justice (…continued)

Our conclusion is consistent with the scope of the privilege as envisioned by the Restatement, which clarifies that only "communications preliminary to a proposed judicial proceeding" are immunized. RESTATEMENT (SECOND) OF TORTS §588 (1977). The official comment elaborates further:

> As to communications preliminary to a proposed judicial proceeding, the rule stated in this Section applies only when the communication has some relation to a proceeding *that is actually contemplated in good faith and under serious consideration by the witness* or a possible party to the proceeding. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered.

*Id.* cmt. *e* (1977) (emphasis added); *see also Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 335 F.3d 1161, 1167 (10th Cir. 2003) (reciting that the privilege attaches "as long as the speaker . . . has an actual subjective good faith belief that litigation is seriously contemplated" (internal quotation marks omitted)); *Messina v. Krakower*, 439 F.3d 755, 760 (D.C. Cir. 2006) (stating that, for the judicial privilege to apply in a

---

(continued…)
to a backward-looking factual assessment of how a third party independently decided to use the allegedly defamatory communication.

Nor are we persuaded by the dissent's suggestion that Addis "could not mount the courage to name her alleged perpetrator until her twenties," and that this is now "be[ing] used against her." Dissenting Opinion, *slip op.* at 1. Such a description is problematic in the context of the present appeal for multiple reasons. First, there is no suggestion in the record that Addis's delay related to any failure of courage. To the contrary, by her own account she continued a consensual relationship with Schanne for many years after graduating from high school, and she disclosed that relationship to a friend in conversation after becoming dissatisfied with Schanne's refusal to admit that he had done anything improper. Second, and more broadly speaking, any suggestion that this circumstance is being "used against her" misses the point: we are only evaluating the narrow legal question of whether and how Addis's *intent and expectation* in making the communication impact upon the applicability of the judicial privilege under the circumstances as they have been presented to us.

defamation case, "litigation [must be] truly under serious consideration" (internal quotation marks omitted)); 50 AM. JUR. 2D *Libel & Slander* §282 (2015) (same).[5]

We are aware that the federal district court referenced several reported decisions from other States in holding that the judicial privilege applies "when student allegations against teachers lead to quasi-judicial proceedings." *Schanne*, 898 F. Supp. 2d at 757. All of those cases are materially distinguishable from the current dispute in that the communications at issue were made in a directed effort to initiate proceedings or otherwise obtain relief from school officials for harm stemming from a school employee's alleged misconduct.[6] Under such a predicate, there is a colorable nexus

---

[5] Along these lines, the supreme court of one of our sister States has noted that:

> It is important to distinguish between the lack of a good faith intention to bring suit and publications which are made without a good faith belief in their truth . . .. The latter, when made in good faith anticipation of litigation, are protected as part of the price paid for affording litigants the utmost freedom of access to the courts. *This policy consideration is not advanced, however, when the person publishing an injurious falsehood is not seriously considering litigation. In such a case, the publication has no connection or logical relation to an action and is not made to achieve the objects of any litigation*.

*Kirschstein v. Haynes*, 788 P.2d 941, 952 n.29 (Okla. 1990) (emphasis added) (quoting *Fuhrman v. Cal. Satellite Sys.*, 231 Cal. Rptr. 113, 119 n.5 (Cal. Ct. App. 1986), *overruled on other grounds by Silberg v. Anderson*, 786 P.2d 365 (Cal. 1990)). The dissent attempts to counteract this reasoning by suggesting that O'Bannon was "a possible party to the proceeding." Dissenting Opinion, *slip op.* at 1. However, the only parties to any action by the school would have been Schanne and the school; at most, O'Bannon would have been a witness. Nor is there any reason to believe that, at the time of Addis's disclosure to O'Bannon, any judicial proceeding was "proposed" (as required by Section 588) or "under serious consideration" (as clarified by comment *e*) – and indeed, both the record and the legal question as framed indicate the opposite.

[6] *See Hartman v. Keri*, 883 N.E.2d 774 (Ind. 2008) (applying the privilege where two graduate students lodged a formal complaint with the university about a professor); *Reichardt v. Flynn*, 823 A.2d 566 (Md. 2003) (recognizing the privilege where high (…continued)

between immunity and the privilege's underlying policy pertaining to the unencumbered resolution of claims in a judicial (or quasi-judicial) setting. *See generally Brody*, 87 Cal. App. 3d at 732 ("[C]ommunications to an official agency, *which are designed to induce the agency to initiate action*, are as much a part of the 'official proceeding' as communications made after the agency commences proceedings." (emphasis altered)). No similar nexus exists in the present case.[7]

Nor do we find Addis's advocacy persuasive. The judicial privilege is a defense raised by the defendant. *See* Pa.R.C.P. 1030(a); *Greenberg*, 427 Pa. at 517, 235 A.2d at 579. As such, any costs associated with litigating the issue arise when the defendant asserts the privilege and the plaintiff challenges it. It can hardly be the law that a plaintiff is prohibited from challenging a defense raised by the defendant because there are costs to litigating its merits. As for Addis's observation that, once the privilege is held to apply, the speaker's intent in making the statement is immaterial: this is true as far as it goes, but it does not address the question raised here concerning whether the defendant's intent is properly taken into account in ascertaining if the privilege applies in the first instance.

Classifying the issue as a question of law does not alter our analysis. Assuming Addis's characterization in this respect is accurate, as a general proposition the

---

(continued…)
school students and their parents met with the principal and accused a sports coach of violating school district policy); *Brody v. Montalbano*, 87 Cal. App. 3d 725 (Cal. Ct. App. 1978) (finding that the privilege applied where parents of schoolchildren wrote a letter to the board of education – and ultimately filed a formal complaint – alleging that the vice-principal had mishandled an incident at school); *Weissman v. Mogol*, 462 N.Y.S.2d 383 (N.Y. Sup. Ct. 1983) (applying the privilege where parents of schoolchildren filed a grievance with the school board concerning alleged malfeasance by a teacher).

[7] We need not presently determine whether the privilege would attach in Pennsylvania in the circumstances which arose in those extra-jurisdictional cases.

resolution of legal issues in specific cases may depend on the facts involved. *See, e.g., Mitchell v. Zoning Hearing Bd.*, 838 A.2d 819, 826 (Pa. Cmwlth. 2003) ("The issue of whether the proposed use constitutes an accessory use is a question of law to be determined based on the underlying facts."). As evidenced by the above Pennsylvania decisions where the judicial privilege was held not to apply, the reviewing court considered facts such as whether the declaration was made in the course of judicial proceedings and/or whether it was relevant to the relief sought.

Finally, we do not believe that accounting for Addis's intent in the present scenario is improper simply because there may be a spectrum of possible intended outcomes in other cases. The privilege only applies relative to judicial proceedings – or, for present purposes, quasi-judicial proceedings. *See supra* note 2. Reviewing courts are capable of discerning whether a particular proceeding fits that description. Furthermore, as discussed, Addis testified that she did not intend for O'Bannon to relay her comments to the school and, as such, did not contemplate that Schanne would be subject to *any* proceedings or otherwise suffer employment-related consequences. Thus, postulating a range of intended outcomes has little relevance to the present controversy.

We pause at this juncture to observe that this opinion should not be construed as attempting to resolve the distinct question of whether a privilege should pertain for schoolchildren who report misconduct by school employees while they are enrolled. That situation is qualitatively different from the present one inasmuch as schoolchildren are generally less sophisticated than adults as to matters of protocol and procedure, and they are in a substantially weaker position than adults in terms of their ability to protect themselves from unjust treatment at the hands of school employees. *Accord*

*Weissman*, 462 N.Y.S.2d at 387.[8]  Here, however, Addis was 26 years old and had graduated from high school more than seven years earlier when she communicated with O'Bannon.  Therefore, such considerations do not apply with equal force.

For the foregoing reasons, in response to the certified question we hold that the judicial privilege does not apply to an allegation made by an adult before commencement of any quasi-judicial proceeding and without an intent that it lead to a quasi-judicial proceeding.[9]

The matter is returned to the Third Circuit.


Messrs. Justice Eakin and Baer and Madame Justice Todd join the opinion.

Mr. Justice Eakin and Madame Justice Todd file concurring opinions.

Mr. Justice Stevens files a dissenting opinion.

---

[8] In such circumstances, extending immunity to a schoolchild who reports misconduct may be justified for policy reasons.  Unlike the judicial privilege, however, the distinctive school setting does not inherently pertain to the core functions of the judicial branch.  Moreover, it involves unique issues applicable to minors.  Accordingly, the outlines of any such privilege may be best suited for determination in a legislative forum where all policy concerns can be discussed and any pertinent research can be presented and analyzed.  *See Lance v. Wyeth*, 624 Pa. 231, 264-65 & n.26, 85 A.3d 434, 454 & n.26 (2014) (recognizing that the General Assembly's ability to examine social policy issues and balance competing concerns is superior to that of the judicial branch).  *See generally Sprague v. Walter*, 518 Pa. 425, 435, 543 A.2d 1078, 1082-83 (1988) (listing legislatively-created privileges); Robert Catz & Jill Lange, *Judicial Privilege*, 22 GA. L. REV. 89, 98 (1987) ("Today, new privileges are created by statutes[.]").

[9] It may be noted that, even absent application of the privilege, the burden of proof as to all elements of the tort of defamation is borne by the plaintiff, *see* 42 Pa.C.S. §8343(a); *see also id.* §8344 (requiring the plaintiff to establish malice or negligence as a prerequisite to recovery), and various defenses may be available to the defendant such as truthfulness or justification.  See *id.* §§8342, 8343(b).