**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3302
_____

CHURCH MUTUAL INSURANCE COMPANY,

Appellant

v.

ALLIANCE ADJUSTMENT GROUP;
JAMES WAGNER; CLAIMS WORLDWIDE LLC;
JOSEPH A. ZENSTEIN, Esquire; JOSEPH T. THIROWAY, Esquire;
DELONG SERVICES; JLD EMERGENCY SERVICES


ALLIANCE ADJUSTMENT GROUP;
JAMES WAGNER,

Third-Party Plaintiffs

v.

AFRICAN EPISCOPAL CHURCH OF ST. THOMAS,

Third-Party Defendant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-15-cv-00461)
District Judge: Hon. Juan R. Sánchez
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 30, 2017
_____

Before: VANASKIE, KRAUSE, and RESTREPO, *Circuit Judges*

(Filed: September 15, 2017)
_____

OPINION[*]
_____

VANASKIE, *Circuit Judge.*

Appellant Church Mutual Insurance Company ("Church Mutual") appeals the dismissal of its insurance fraud action against lawyers and their law firm in submitting claims for insurance benefits on behalf of the African Episcopal Church of St. Thomas ("AEC"). Church Mutual also appeals the District Court's denial of its motion to amend the complaint and certain discovery rulings. For the reasons that follow we will affirm the District Court's contested decisions.

I.

Church Mutual brought this action against several parties involved in the filing of two allegedly fraudulent insurance claims on behalf of its insured, AEC. This appeal concerns only those claims brought against Appellee law firm, Claims Worldwide, LLC, and two of its attorneys, Joseph A. Zenstein and Joseph Thiroway (together, "the lawyers").

For many years prior to this litigation, Church Mutual insured AEC against property damage. In December of 2011, Alliance reported a claim to Church Mutual that

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

AEC's property had sustained damage in August of 2011 as a result of frozen pipes (the "chiller claim").[1] According to Church Mutual, however, AEC never experienced damage as a result of frozen pipes and did not know that Alliance had submitted this claim on its behalf. Church Mutual hired two experts to investigate the chiller claim and both concluded that the damage was caused by defectively installed insulation, and not frozen pipes. Because defective insulation was not covered in AEC's policy, Church Mutual denied coverage on the chiller claim.

While the chiller claim was pending, AEC and Alliance entered into a second contract to assist with a claim for alleged damages arising from Hurricane Irene (the "hurricane claim").[2] The engineer for Church Mutual investigating this claim determined that the damage allegedly caused by the hurricane was already present during a Risk Control Inspection of the church that had occurred before the hurricane. The engineer believed that the majority of the damage resulted from general wear and tear and was not attributable to Hurricane Irene. Although Alliance had claimed damages in excess of $1 million, Church Mutual determined that no more than $7,563.33 in damage was actually caused by the hurricane. Church Mutual then paid that amount and denied coverage for the remainder of the claim.

---

[1] Alliance submitted this claim pursuant to a written agreement with AEC that entitled Alliance to 25% of any amount paid by Church Mutual.

[2] Hurricane Irene occurred on August 27, 2011, several months before Alliance had reported the chiller claim.

After the denial of both claims, Alliance retained Claims Worldwide to pursue litigation. Zenstein and Thiroway filed two separate coverage actions in state court that were subsequently removed to federal court and consolidated. During discovery, three individuals affiliated with AEC disavowed substantial portions of the damages Alliance sought on their behalf. AEC then retained new counsel and dismissed both actions with prejudice.

Following this dismissal, Church Mutual initiated the instant action against the lawyers and others alleging negligent misrepresentation, fraud, and civil conspiracy.[3] The lawyers moved to dismiss the complaint, arguing that judicial privilege immunized their actions. The District Court agreed that the judicial privilege required dismissal of the negligent misrepresentation and fraud counts, but allowed the civil conspiracy claim to proceed.

Following the dismissal, Church Mutual moved to amend its complaint to reassert its claims of negligent misrepresentation and fraud against the lawyers, arguing that evidence obtained in discovery demonstrated that they engaged in actionable conduct that was not immunized by the judicial privilege. The District Court denied this motion, however, as the conduct alleged "generally [fell] within the ambit of litigation communication" protected by the judicial privilege. (App. 25.) The District Court concluded that amendment would be futile as it would not survive a motion to dismiss.

During discovery, the District Court denied Church Mutual's request for

---

[3] The claims against other parties are not before us on appeal.

4

production of the lawyers' personal and business tax returns, noting that the information Church Mutual sought regarding payments had already been submitted by the lawyers. The Court also granted the lawyers' request to depose Church Mutual's claims counsel, Christopher Grunewald, whom the Court determined to be the only person at the company with personal knowledge of the allegations in Church Mutual's complaint. The Court further granted the lawyer's motion for the production of Church Mutual's litigation file, and corresponding privilege log, for the litigation over the two insurance claims.

At the conclusion of discovery, Church Mutual and the lawyers filed cross motions for summary judgment on the civil conspiracy claim. The District Court granted the lawyers' motion and denied Church Mutual's motion. Church Mutual filed this timely appeal.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1332 and our jurisdiction arises under 28 U.S.C. § 1291. We exercise plenary review over a dismissal under Fed. R. Civ. P. 12(b)(6) as well as the grant or denial of summary judgment. *Ditri v. Coldwell Banker Residential Affiliates, Inc*., 954 F.2d 869, 871 (3d Cir. 1992); *181 S. Inc. v. Fischer*, 454 F.3d 228, 231 (3d Cir. 2006). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review both the denial of a motion to amend and the District Court's discovery rulings for abuse of discretion.

*Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 123 (3d Cir. 2010); *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 412 (3d Cir. 2002).

III.

On appeal, Church Mutual argues that the District Court erred in dismissing its negligent misrepresentation and fraud claims and in granting summary judgment on its civil conspiracy claim. Church Mutual also contends that the District Court abused its discretion in (1) denying its requests for the lawyers' tax returns, (2) granting the lawyers' request for production of the litigation file; (3) granting the lawyers' motion to depose Christopher Grunewald; and (4) denying leave to amend its complaint. We will address the arguments in turn.

A. Negligent Misrepresentation and Fraud

Church Mutual brought its negligent misrepresentation claim against the lawyers pursuant to Section 552 of the Restatement (Second) of Torts, and its fraud claim under the Pennsylvania Insurance Fraud Statute, 18 Pa. Cons. Stat. § 4117. The District Court dismissed these claims without reaching the merits as it determined that they were barred by Pennsylvania's judicial privilege.

The judicial privilege provides "absolute immunity for 'communications which are issued *in the regular course of judicial proceedings* and which are *pertinent and material to the redress or relief sought.*'" *Bochetto v. Gibson*, 860 A.2d 67, 71 (Pa. 2004) (citing *Post v. Mendel*, 507 A.2d 351, 355 (Pa. 1986) (emphasis in original)). "The privilege covers statements by a party, a witness, an attorney, or a judge" and "where [the privilege] attaches, the declarant's intent is immaterial even if the statement is false and

6

made with malice." *Schanne v. Addis*, 121 A.3d 942, 947 (Pa. 2015). "Statements contained in pleadings, as well as statements made in the actual trial or argument of a case, are privileged." *Post*, 507 A.2d at 353. The District Court found that Church Mutual's claims were "premised entirely on filings and pleadings submitted by the lawyer[s] [in] the regular course of judicial proceedings," and therefore barred by judicial privilege. (App. 14.)

Church Mutual contends that the privilege should not apply because the lawyers' allegedly fraudulent conduct was not limited to statements made in filings and pleadings and the statements were not made in the normal course of judicial proceedings. Church Mutual cites the allegations in its Complaint, which contains a list of actions which it claims constitute negligent misrepresentation. The majority of these allegations consist either of a failure to conduct a proper investigation before filing the complaint or the misrepresentation of information contained in that complaint. With regard to the fraud claim, the complaint merely states that the lawyers "knowingly presented false, fraudulent, incomplete, and/or misleading information…with the intent to deceive and/or defraud Church Mutual." (App. 87 ¶¶ 129–130.)

Church Mutual relies upon two cases in which we declined to apply judicial privilege to bar claims against attorneys. In the first, following litigation between a manufacturer and its insurer, the manufacturer brought an abuse of process claim against the law firm that had represented its insurer and one of the firm's attorneys. *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 300 (3d Cir. 2003). Without reaching the judicial privilege issue, we permitted the plaintiffs to amend their complaint,

7

concluding that the "[judicial] privilege does not extend to either conduct or to other communications neither pertinent and material to the redress or relief sought nor essential to the exploration of legal claims in litigation." *Id.* at 312 (internal quotation marks omitted). In the second case, class action plaintiffs brought fraud and fraudulent concealment claims against an asbestos manufacturer's law firm and specific lawyers based on an alleged conspiracy between them and their client. *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 311 (3d Cir. 2014). We declined to apply New Jersey's judicial privilege, finding that the complaint alleged a "systematic fraud" over many years, and in many courtrooms, that involved not only false statements but the destruction and creation of evidence. *Id.* at 317.

As the District Court noted, both of these cases involved conduct not alleged here. In *Fireman's Fund*, the plaintiff alleged that the defendant law firm had used the discovery and litigation process for harassment, draining resources, delaying and avoiding payment, and impeding litigation. *Fireman's Fund*, 337 F.3d at 309. We did not reach the question of the application of judicial privilege but did find that, because the plaintiff based its "cause of action . . . chiefly on conduct," an amended complaint "could include averments that the attorney appellees abused process in a manner not protected by the judicial privilege." *Id.* at 312. Central to this determination was the fact that there were "few allegations in the Complaint pertaining to the substance of any communication." *Id.* The same is true of *Williams*, in which the plaintiff class alleged that the defendant lawyers "destroyed or hid" evidence and provided false evidence to a series of plaintiffs in multiple lawsuits. *Williams*, 765 F.3d at 310.

8

In this case, on the other hand, Church Mutual's complaint alleges misrepresentations in the pleadings submitted on behalf of AEC. The District Court did not err in finding these communications to be made during the course of litigation and thus shielded by judicial privilege. As the District Court noted, none of Church Mutual's allegations reflect the type of conduct present in *Fireman's Fund* and *Williams*.

## B. Civil Conspiracy

Church Mutual alleged that the lawyers engaged in a civil conspiracy with Alliance and others in submitting false insurance claims on behalf of AEC. Under Pennsylvania law, to prove a claim for civil conspiracy, a plaintiff must show "two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979). "Proof of malice, i.e., an intent to injure, is essential in proof of a conspiracy." *Id.* The District Court concluded that Church Mutual provided no evidence from which a reasonable jury could find that the defendants agreed to pursue fraudulent claims or that they acted with the requisite malice. *See Skipworth by Williams v. Lead Indus. Ass'n, Inc.*, 690 A.2d 169, 174 (Pa. 1997). We agree.

Church Mutual had alleged that the defendants "acted in concert with the common purpose of submitting fraudulent claims." (App. 88 ¶ 137.) Church Mutual also asserted that the defendants "acted maliciously with the intent of injuring" the company. (App. 89 ¶ 139.) As the District Court noted, the evidence upon which Church Mutual primarily relied was the close business relationships between the defendants. The defendants served as referral sources and worked together on prior unrelated insurance actions. The

lawyers were also previously tenants of the adjusters and the lawyers and adjusters employed the same people at different times. Finally, the parties were financially intertwined, with payments exchanged informally on a case by case basis.

We agree with the District Court, however, that, in the absence of other evidence of concerted action and malice, summary judgment was appropriate. Accordingly, we will affirm the District Court's summary judgment ruling on the civil conspiracy claim.

## C. Motion to Amend

Church Mutual also contends that the District Court abused its discretion in denying Church Mutual's motion to amend its complaint with respect to its claims against the lawyers. The District Court denied this motion, finding that Church Mutual's new allegations would not withstand a motion to dismiss and therefore the proposed amendment was futile. According to the District Court, most of the new allegations involved communications made during litigation and would therefore be barred by judicial privilege. For those allegations arguably not covered by the privilege, the District Court determined that they were either irrelevant or "too boilerplate to withstand a motion to dismiss." (App. 25.) We conclude that the District Court did not abuse its discretion in denying leave to amend, as we agree that the proposed amendments would not cure the defects in the original complaint.

Church Mutual's motion for leave to amend included a list of alleged "conduct" on the part of the lawyers which they claimed "went beyond [the lawyers'] role as legal counsel" and "which shows [they] took an active role in perpetrating fraud and engaging in various acts to misrepresent facts for their own financial gain and/or the financial gain

10

of parties other than their supposed client." (App. 5519–20.) Many of these new allegations, however, involve the same type of communication as that included in the original complaint—communication to which the judicial privilege clearly attaches. For example, several sections of the proposed amended complaint claim that the lawyers inserted language into their complaints that was fabricated or not supported by personal knowledge. (App. 5520) These statements are nonetheless protected by judicial privilege as they were "made in the regular course of judicial proceedings and are material to the relief sought." *Schanne*, 121 A.3d at 947 (citing *Bochetto v. Gibson*, 860 A.2d 67, 71 (Pa. 2004)). Furthermore, when the privilege attaches, "the declarant's intent is immaterial even if the statement is false and made with malice." *Id.* (citing *Bochetto*, 860 A.2d at 71 n. 12). All such new allegations, therefore, would not cure the deficiency of the original complaint, as they would also be barred by judicial privilege.

Although, as the District Court noted, some of the new allegations may arguably fall outside the scope of judicial privilege, such as allegations that the lawyers maintained an improper relationship with their adjusters and that that they presented an aura of expertise with regard to the underlying claims, they do not support either the negligent misrepresentation or the fraud claims. The same is true of Church Mutual's assertion that the lawyers engaged "in actions inconsistent with traditional first-party insurance claim submission practices." (App. 5521.)

A court may deny leave to amend if amendment would be futile, meaning that the "complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). The District Court correctly

11

concluded that the new allegations would not survive a motion to dismiss, and thus did not abuse its discretion in denying leave to amend.

## D. Discovery Rulings

Finally, Church Mutual contests several District Court discovery rulings. Church Mutual argues that the District Court erred in denying its request for the production of the personal and business tax returns of the lawyers and the adjusters. According to Church Mutual, this evidence was necessary for it to establish its conspiracy claim for the purposes of surviving summary judgment. The District Court noted at oral argument, however, that the lawyers and adjusters had already submitted information documenting their financial relationship, including a chart which showed the cases on which the parties worked and the amounts exchanged by the parties. The District Court determined that the disclosure of the parties' tax returns would not provide Church Mutual with any additional information from which it could establish the existence of a conspiracy. The District Court did not abuse its discretion in denying this request.

Church Mutual also contends that the District Court abused its discretion in (1) allowing the deposition of its Claims Counsel, Christopher Grunewald; and (2) ordering the production of its litigation file in the underlying litigation with the corresponding privilege log. We discern no such abuse. First, the lawyers sought to depose Mr. Grunewald as he had been identified as the person most knowledgeable about the allegations in Church Mutual's complaint. Second, the lawyers sought production of Church Mutual's billing records and other litigation materials to the extent they were relevant to Church Mutual's claims for damages relating to attorneys' fees incurred in the

12

underlying litigation.  The District Court recognized that some of this material may be privileged and properly requested a detailed privilege log to accompany the production. The District Court did not abuse its discretion in granting these two motions.[4]

## IV.

For the foregoing reasons, we will affirm the orders of the District Court.

---

[4] Church Mutual also appears to assert that the District Court abused its discretion in suggesting that the lawyers could strike an allegation in the complaint by serving admissions to Church Mutual instead of filing a motion to strike and a motion to sanction. According to Church Mutual, this constituted the District Court taking "an active role in assisting [the defendants] in . . . litigation." (Appellant's Br. at 55.)  We find nothing inappropriate in the District Court's exchange with the defendants' counsel. The District Court's suggestion was posed as a hypothetical during a colloquy with the defendants' counsel and was not, as Church Mutual contends, the District Court injecting itself into the defendants' litigation strategy.