**[J-43-2022] [MO: Todd, C.J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 5 EAP 2022 |
| | : | |
| Appellee | : | Petition for Certification of Question |
| | : | of Law from the United States Court |
| | : | of Appeals for the Third Circuit at |
| v. | : | No. 17-1861 |
| | : | |
| | : | ARGUED: September 13, 2022 |
| MARC J. HARRIS, | : | |
| | : | |
| Appellant | : | |

**CONCURRING OPINION**

**JUSTICE MUNDY**          **DECIDED: February 22, 2023**

I join the majority opinion, as I am in full agreement with the majority's plain-text analysis of the definition of aggravated assault, as set forth in Section 2702(a)(1) of the Crimes Code,[1] and with its ultimate conclusion that "the exercise of direct or indirect physical force . . . is not the exclusive means" by which serious bodily injury can be inflicted. Majority Op. at 23. I am also aligned with the concept, highlighted by the majority, that in certified-question matters this Court ordinarily limits its review to the question asked, see *id*. at 15, which is inevitably an issue of Pennsylvania law. *See* Pa.R.A.P. 3341(b)(3). I write separately, however, to suggest that a modestly different answer to the certified question might be appropriate in this particular matter. My reasoning follows.

---

[1] Under that provision, a person is guilty of aggravated assault if he or she "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1).

Initially, we do not, strictly speaking, limit our review to the certified question alone. Just as we normally resolve legal issues within the context of the specific features of the case at hand as reflected by the record, *see generally Maloney v. Valley Med. Facilities, Inc.*, 984 A.2d 478, 485-86 (Pa. 2009) (referencing the axiom that judicial decisions are to be read against the facts of the case), in certified-question matters we rely for such context on the facts of the case as developed in the federal district court. *See, e.g.*, *Shanne v. Addis*, 121 A.3d 942, 943-44 (Pa. 2015).

This matter is anomalous in two material ways. First, the answer to the certified question is divorced from the facts of the relevant offense. Regardless of how Appellant actually committed aggravated assault, we are asked to determine whether there are *other* scenarios, not involving the use of physical force, which would also fall within the scope of the offense as defined.[2] This type of exercise we do not usually undertake. We "do not render decisions in the abstract or offer purely advisory opinions[.]" *Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 659 (Pa. 2005).

Second, it is evident from the federal proceedings that simply answering the state-law question is not sufficient for the Third Circuit to proceed. It is undisputed that whether a state-court conviction falls under ACCA's elements clause, *see* 18 U.S.C. § 924(e)(2)(B)(i) (relating to felonies having, as an element, "the use, attempted use, or

---

[2] In this regard, the Pennsylvania Attorney General observes that, due to use of the categorical approach, this type of dispute involves a reversal of the norm: the defendant argues for the broadest possible scope of the offense, while the prosecutor proposes the narrowest interpretation. The categorical approach may also be criticized for basing judicial decision-making on speculation, concerning the theoretical reach of a criminal statute, which is willfully blind to the way the offense is committed in the vast majority of cases, and to whether there is any suggestion in the state court record that the defendant actually committed it using outlier means. For example, if it is clear a defendant used a firearm to commit the predicate offense, why should he escape enhanced sentencing because *someone else* might use starvation? Such criticism, however, is beyond the scope of this appeal, as we lack authority to contradict the Supreme Court's mandate that the categorical approach be utilized in this type of sentencing matter.

threatened use of physical force against the person of another"),[3] is a question of federal law, not state law. *See Johnson v. United States*, 559 U.S. 133, 138 (2010); *see also* Petition for Certification of Question of Law, at 5 (acknowledging that, to decide the appeal before it, the Third Circuit must determine whether aggravated assault qualifies as a violent felony under ACCA). Hence, we have agreed to provide an advisory opinion where the underlying context is not the *facts* of the case but a *federal issue*. In these unusual circumstances, I believe we should consider that issue when answering the certified question.

The United States argues the Third Circuit's question being framed in terms of physical force cannot be taken in a strict legal sense because, as noted, the question of whether (a)(1) aggravated assault requires physical force for ACCA purposes is a federal issue that depends on how the United States Supreme Court views that term as it is used in ACCA. As aptly developed by the majority, the United States asserts the state law question embedded in the certified question is what *conduct* can violate the statute, independent of whether we believe that conduct entails the use of physical force. Once the federal court has an answer to that question, it can determine whether the use of ACCA-level force is necessary. *See* Brief at 9-10. The United States, notably, urges this Court to affirm that the conduct in *Commonwealth v. Thomas*, 867 A.2d 594 (Pa. Super. 2005), namely, starving a child to death, constituted aggravated assault; it will then forward arguments to the Third Circuit as to why those actions still meet the definition of physical force under ACCA.

The Pennsylvania Attorney General (Commonwealth) is aligned with the United States. As described by the majority, the Commonwealth posits force can be direct or indirect, and gives as examples: using a mechanical agent, administering a narcotic or

---

[3] ACCA is the federal Armed Career Criminal Act. *See* 18 U.S.C. § 924.

poisonous substance, exposing another to inclement weather, abandoning a young child, and setting a mechanical trap. *See* Brief at 2, 6-7. According to the Commonwealth, even abandoning an infant involves "force" used to place the infant in a location where nobody will come to its aid. *See* Brief at 7-8 & nn.4-5. The Commonwealth thus characterizes the statement in *Thomas* that "the use of force or the threat of force is not an element of the crime," as a one-sentence, ill-considered aside, and as *dicta*. The Commonwealth suggests this Court say that much and go no further.

As explained, it is a question of federal law for the Third Circuit whether (a)(1) aggravated assault requires ACCA-level physical force. The Supreme Court has stated such physical force is "force exerted by and through concrete bodies," distinguishing it from intellectual force or emotional force. *Johnson*, 559 U.S. at 138. The term "suggests a category of violent, active crimes," *id*. at 140 (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004)), where the force is "capable of causing physical pain or injury to another person." Mere offensive touching is insufficient as there must be a "substantial degree of force," "strong physical force," and "force strong enough to constitute 'power.'" *Id*. at 140, 142. I agree with the majority that, as far as aggravated assault is concerned, besides the required scienter level the only other element refers to "causing" or "attempting to cause" serious bodily injury. 18 Pa.C.S. § 2702(a)(1). The plain text encompasses any means of causation so long as the defendant's conduct is the direct and substantial cause of the injury. *See Commonwealth v. Uhrinek*, 544 A.2d 947, 951 (Pa. 1988) (discussing causation in the criminal context).

The United States essentially asserts it is impossible to cause serious bodily injury without employing some physical force, even if that force is indirect in nature. That position has some potential support. In *United States v. Castleman*, 572 U.S. 157 (2014), which arose under a different federal statute, the Court stated as a general matter it is

impossible to cause bodily injury without applying force *in the common-law sense*. The Court referred expressly to battery committed by administering poison, infecting with a disease, or use of an "intangible substance such as a laser beam." *Id*. at 170 (internal quotation marks and citation omitted). The Court indicated, for example, the act of sprinkling poison in a person's drink would be a use of force – again, in the common-law sense, which, notably, is a term of art.

*Johnson* clarified that the phrase "use of force" in ACCA's elements clause is narrower than the common-law meaning because it requires violent force inasmuch as the phrase appears in ACCA's definition of violent felonies. *See Johnson*, 559 U.S. at 139-40; *see also Bond v. United States*, 572 U.S. 844, 861-62 (2014) (same). This calls into question whether starvation and poisoning involve ACCA-level force. As well, serious bodily injury may be caused by mere trickery – *e.g.*, deceiving a person into stepping on a rotted-out floorboard, knowing she will fall through and sustain injuries. That could potentially come within the definition of aggravated assault if the defendant's deception of the victim were to be deemed the direct and substantial cause of her injuries.

It is also problematic that extreme recklessness can be the *mens rea* for (a)(1) aggravated assault. This may impact upon whether the crime always requires the "use" of force "against" another. *Castleman* noted the word "use" conveys that the force the defendant used was employed knowingly to cause physical harm. *See Castleman*, 572 U.S. at 171 (emphasis added). It explained that "*Leocal* held that the 'use' of force must entail 'a higher degree of intent than negligent or merely accidental conduct.'" *Id*. (quoting *Leocal*, 543 U.S. at 9). And the Supreme Court has held the elements clause does not include reckless conduct. *See Borden v. United States*, 141 S. Ct. 1817 (2021). Four Justices explained that ACCA's reference to the "use of force" "against another" implies directed action specifically targeting another person. *Id*. at 1825 (plurality). The Justice

who supplied the fifth vote reasoned that, regardless of the "against another" phraseology, "use of" alone refers to intentional conduct. *See id*. at 1835 (Thomas, J., concurring in the judgment).

Here, the certified question asks whether (a)(1) aggravated assault requires the *use of* physical force which, as noted, suggests intentional conduct. *Borden* left the question of *extreme* recklessness for another day. *See id*. at 1825 n.4. Hence, it is an unsettled question of federal law whether that type of conduct comprises the use of force against the person of another under ACCA's elements clause.[4]

Given that poisoning and starving (and deceiving) are not usually thought of as employing violent force, I would find it tenuous to conclude that (a)(1) aggravated assault requires the "use of force against another" as contemplated by ACCA's elements clause. With that said, I also agree with the United States that that question is beyond the scope of what this Court can reasonably decide in the present context. What this Court can do is explain whether such examples would count as aggravated assault under (a)(1).

---

[4] This problem is mitigated to some extent because Section 2702(a)(1) is a "divisible" statute. It thus allows for use of the "modified" categorical approach. *See A.L. v. Pa. State Police*, 274 A.3d 1228, 1234-35 (Pa. 2022) (describing the modified categorical approach used by federal courts for ACCA sentencing where the state statute is divisible). This is because Section 2702(a)(1) lists the three types of culpability – based on knowing, intentional, or extremely reckless conduct – in the disjunctive, *see Mathis v. United States*, 579 U.S. 500, 513 (2016) (citing *Descamps v. United States*, 570 U.S. 254, 263-64 (2013)), and it may be clear in some instances from documents in the state court record that the defendant was convicted under (a)(1) based on intentional or knowing conduct. *See generally Johnson*, 559 U.S. at 144 (listing permissible source documents associated with the predicate conviction).

Separately, it may also be evident from such documents the defendant was convicted based on an attempt rather than a completed crime. Then, the scienter element will not encompass extreme recklessness because attempts are always intentional. *See Commonwealth v. Matthew*, 909 A.2d 1254, 1257 (Pa. 2006). At the same time, a conviction based on an attempt only requires proof of a substantial step toward the crime's completion, *see id*., which may in turn signify ACCA's elements clause is not satisfied. *Cf. United States v. Taylor*, 142 S. Ct. 2015, 2020-21 (2022) (holding a substantial step toward completing a robbery does not satisfy ACCA's elements clause).

Consistent with the Majority, so long as scienter and causation are proved, in my view they would qualify.

Accordingly, if left to my own devices, I would answer the question posed as follows:

> As long as the scienter and causation elements are proved beyond a reasonable doubt, the defendant's conduct qualifies as aggravated assault under 18 Pa.C.S. § 2702(a)(1). This includes conduct where the defendant causes or attempts to cause serious bodily injury through starvation or poisoning.

It would then be up to the Third Circuit, applying federal law, to ascertain whether aggravated assault always requires the use of *ACCA-level* physical force against the person of another – which, as noted (and as reflected in the Petition for Certification of Question of Law), is the actual issue that court needs to resolve.

Justice Dougherty joins this concurring opinion.