J-A06040-20

2020 PA Super 70

| CAROLYN FORBES | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KING SHOOTERS SUPPLY, WISTA, | : | No. 2018 EDA 2019 |
| INC.,  KING SHOOTERS SUPPLY, | : | |
| INC.,  HAVEN BEHAVIORAL | : | |
| HOSPITAL OF  PHILADELPHIA AND | : | |
| HAVEN  BEHAVIORAL HEALTHCARE, | : | |
| INC. | : | |

Appeal from the Order Entered May 14, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 181001226


BEFORE:   STABILE, J., KING, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    March 25, 2020

Appellant, Carolyn Forbes, appeals from the order granting the motion for judgment on the pleadings filed by Appellees King Shooters Supply, Wista, Inc., and King Shooters Supply, Inc. (collectively "the King appellees").[1] After a careful review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] On April 4, 2019, Haven Behavioral Hospital of Philadelphia and Haven Behavioral Healthcare, Inc. (collectively "the Haven defendants") were dismissed from this action via the entry of a judgment of *non pros* in their favor pursuant to Pa.R.Civ.P. 1042.7, relating to Appellant's failure to file a timely Certificate of Merit.  On August 1, 2019, the Haven defendants filed in this Court a "Notice of No Interest" indicating that they would not be filing an appellate brief.

The relevant facts and procedural history are as follows: Appellant instituted the instant case via a writ of summons on October 10, 2018, and on December 21, 2018, she filed a civil complaint. Therein, Appellant averred she purchased a firearm from King Shooters Supply, which is a store located in King of Prussia, Pennsylvania. She contended she purchased the firearm for protection due to "her home having been broken into on several occasions." Appellant's Complaint, filed 12/21/18, ¶ 8.[2]

On January 13, 2017, after deciding it was not wise to keep her gun loaded, she attempted to remove the bullets from the gun; however, she was unable to do so. *Id.* ¶ 9. Appellant averred she was "quite upset at the time as the pattern of break-ins and attempted break-ins to her home continued." *Id.* ¶ 10.

Accordingly, Appellant returned to King Shooters Supply for additional assistance, and she advised employees at the store of her concerns. *Id.* ¶ 11. "[Appellant] subsequently learned that employees of King Shooters [Supply] called the local police and suggested that [Appellant] was in need of psychiatric intervention." *Id.* ¶ 12. Three police officers arrived on the scene and asked Appellant to accompany them to the Suburban Community Hospital. *Id.* ¶ 13.

---

[2] We note the complaint is not paginated.

Appellant averred she was then transferred to the Haven Behavioral Hospital of Philadelphia ("Haven"), where she was admitted. Specifically, Appellant averred she "was admitted to Haven under Section 201 of the Mental Health Procedures Act, although her admission was not voluntary,[and during this] time [she] was advised that Haven could seek an involuntary commitment under Section 302 of the Act if she did not agree to remain." *Id.* ¶¶ 15, 16.

Appellant claimed that, "[a]lthough [Appellant] was admitted as being allegedly delusional, Haven upon investigation of the concerns expressed by [Appellant] determined they were true and acquaintances verified she was not delusional." *Id.* ¶ 17. Appellant contended that on several occasions she indicated her desire to leave, "but Haven continued to threaten to seek an involuntary commitment and refused to permit her to leave." *Id.* ¶ 18. Appellant argued Haven made "this threat although there is nothing in the record to indicate [Appellant] exhibited a threat of harm to herself or others and thus did not meet the criteria for an involuntary commitment." *Id.* ¶ 19.

Appellant indicated that, on January 26, 2017, she was discharged from Haven. She averred she was "held against her will without a Court Order for 13 days." *Id.* ¶ 21. She further averred she does not suffer from a psychotic disorder and at no time was she a danger to herself or others. Accordingly, she posited that she "did not require inpatient psychiatric treatment and was

held against her will and against the requirements of the Mental Health Procedures Act." *Id.* ¶ 23.

Based on the aforementioned, Appellant presented six Counts in her complaint, two of which presented claims against the King appellees.[3] Specifically, in Count I, Appellant raised a slander claim against the King appellees in connection with the statements the King Shooters Supply employees made to the police. Specifically, Appellant averred the employees' "[c]ontacting the police and giving unsupported and untrue allegations of delusional and paranoid behavior was defamatory and harmful to [Appellant]." *Id.* ¶ 29.

Further, she averred that, "[a]s a result of the defamatory statements [made] by the King [Shooter Supply employees], [Appellant] was taken against her will and was held against her will in a mental health facility for 13 days." *Id.* ¶ 31. She indicated she suffered great pain, agony, mental anguish, and humiliation, as well as economic losses due to the King Shooter Supply employees' defamatory statements to the police. *Id.* ¶¶ 32-34.

In Count II, Appellant raised a claim of vicarious liability against Wista, Inc., and King Shooters Supply, Inc. Therein, Appellant argued the

_____

[3] In Counts III through VI, Appellant raised claims of negligence, false imprisonment, and vicarious liability in connection with the Haven defendants' application of the Mental Health Procedures Act. Appellant has presented no claims on appeal with regard to the Haven defendants or the entry of judgment of *non pros* as to these Counts of the complaint.

"salespeople, clerks, and other personnel to be determined during discovery were under the supervision and control of the corporate [appellees] and were required to adhere to the policies, procedures and regulations promulgated by said [appellees]." *Id.* ¶ 36. She contended the King Shooters Supply employees were acting under the scope of their employment when they made the alleged defamatory statements to the police. *Id.* ¶ 37. Accordingly, she claimed Wista, Inc., and King Shooters Supply, Inc., were vicariously liable for the injuries caused by the King Shooters Supply employees' statements to the police.[4]

On February 1, 2019, the King appellees filed a motion for judgment on the pleadings. Therein, they averred the slander and vicarious liability claims were "predicated upon statements an employee or agent…allegedly made to the police[;]" however, the alleged defamatory statements were protected by an absolute privilege. King Appellees' Motion, filed 2/1/19, at ¶ 27 (citation omitted).[5]

In this regard, they averred "[a]ll communications pertinent to any stage of a judicial proceeding are accorded an absolute privilege which cannot be destroyed by abuse." King Appellees' Motion, filed 2/1/19, at ¶ 27 (citation omitted). Further, "[t]his privilege attaches to communications made prior to

---

[4] On January 10, 2019, the King appellees filed an answer with new matter, and on January 15, 2019, Appellant filed a reply.

[5] The motion for judgment on the pleadings was not paginated.

the institution of proceedings if the communications are 'pertinent and material' and 'issued in the regular course of preparing for contemplated proceedings.'" *Id.* ¶ 28 (citation omitted).

The King appellees reasoned that "statements made to an official agency, which are designed to induce that agency to initiate action, are privileged and cannot serve as the basis for the defamation claim." *Id.* ¶ 29 (citation omitted). They argued "[Appellant's] own Complaint asserts that the statements allegedly made by the employees…, which serve as the basis for her…claims, were designed to induce the police to request [that Appellant] be evaluated for mental health concerns." *Id.* ¶ 30 (citation omitted). Accordingly, the King appellees contended that, as a matter of law, any statements allegedly made by the King Shooter Supply employees to the local police could not give rise to liability for slander in the case *sub judice*.

Additionally, the King appellees argued they were entitled to judgment on the pleadings because the alleged statements were incapable of a defamatory meaning. In this regard, the King appellees averred "[a]ll of the alleged communications by [the] employee to the police, even if accepted as true, are either expressions of opinion, or intended to impart the factual basis upon which the employee was forwarding his or her opinion, and therefore cannot be slanderous as a matter of law." *Id.* ¶ 37.

Additionally, they contended "an essential element of a claim for slander is the understanding, by the recipient of the communication, of the

communication's defamatory meaning." *Id.* ¶ 38 (citation omitted). They averred "[e]ven if the allegations of [Appellant's] Complaint are accepted as true, the statements, as a matter of law, could not have been understood by law enforcement agents as defamatory in meaning" since it is a fundamental function of law enforcement to receive reports regarding mental health emergencies. *Id.* ¶ 40.

On February 21, 2019, Appellant filed an answer to the motion for judgment on the pleadings. By order entered on March 14, 2019, the trial court granted, in part, and denied, in part, the King appellees' motion for judgment on the pleadings. Specifically, the trial court granted the motion in favor of the King appellees as to Count I (slander) of the complaint; however, the trial court denied the motion as to Count II (vicarious liability) of the complaint. The trial court directed that discovery should proceed as to Count II.

On April 12, 2019, the King appellees filed a motion for reconsideration of the trial court's March 14, 2019, order. Moreover, on April 15, 2019, the King appellees filed a motion to amend the March 14, 2019, order to include language permitting them to file an immediate appeal from the interlocutory order. *See* Pa.R.A.P. 1311; 42 Pa.C.S.A. § 702(b). Appellant filed a reply to both motions.

By order filed on April 24, 2019, the trial court vacated its March 14, 2019, order as to Count II of the complaint only. The trial court specifically

indicated it would reconsider the motion for judgment on the pleadings and then issue a ruling.[6]

By order entered on May 14, 2019, the trial court granted the King appellees' motion for judgment on the pleadings in its entirety. The trial court specifically noted Count II of the complaint was dismissed with prejudice. In its supporting May 14, 2019, opinion, the trial court indicated it granted the King appellees' motion on the basis the statements the King Shooter Supply employees made to law enforcement officers were absolutely privileged. Thus, the trial court concluded the statements could not provide a basis for a claim of defamation or vicarious liability predicated thereupon.[7]

On June 10, 2019, Appellant filed a notice of appeal to this Court. The trial court did not direct Appellant to file a Pa.R.A.P. 1925(b) statement, and consequently, no such statement was filed. However, the trial court filed a

_____

[6] There is no dispute that the March 14, 2019, order was not a final order. **See** Pa.R.A.P. 341. Since the March 14, 2019, order was interlocutory, the trial court was permitted to vacate and modify the order after the expiration of the thirty days after its entry. **See Commonwealth v. James**, 620 Pa. 465, 69 A.3d 180 (2013) (holding trial court is empowered to grant reconsideration of an interlocutory order beyond 42 Pa.C.S.A. 5505's 30-day period for modification); **Hutchison by Hutchison v. Luddy**, 611 A.2d 1280, 1288 (Pa.Super. 1992) ("Where an order does not effectively place the litigant out of court or end the lawsuit, it is within the trial court's discretion to entertain a motion to reconsider the interlocutory order outside the 30–day time limit set forth in 42 Pa.C.S.A. § 5505.").

[7] On May 14, 2019, the trial court also denied the King appellees' motion to amend as moot.

brief Pa.R.A.P. 1925(b) opinion on August 6, 2019, in which it referenced its May 14, 2019, opinion.

On appeal, Appellant contends the trial court erred in granting the King appellees' motion for judgment on the pleadings as to Counts I and II of her complaint. Specifically, Appellant contends the King Shooters Supply employees' statements, which were made to the police suggesting that Appellant "was in need of psychiatric intervention," were false, defamatory, and not protected by an absolute privilege. *See* Appellant's Brief at 12.

Our standard of review for the grant or denial of judgment on the pleadings is equally well-settled:

> The standard to be applied upon review of a motion for judgment on the pleadings accepts all well-pleaded allegations of the complaint as true. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Tucker v. Philadelphia Daily News*, 577 Pa. 598, 848 A.2d 113, 131 (2004) (quotation and quotation marks omitted).

> Entry of judgment on the pleadings is permitted under Pa.R.C.P. 1034 which provides for such judgment after the pleadings are closed, but within such time as not to delay trial. A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. In determining if there is a dispute as to facts, the court must confine its consideration to the pleadings and relevant documents. The scope of review on an appeal from the grant of judgment on the pleadings is plenary. We must determine if the action of the court below was based on clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury.

***Donaldson v. Davidson Bros., Inc.***, 144 A.3d 93, 100-01 (Pa.Super. 2016)

(quotation omitted).

> By way of background, in an action for defamation, the plaintiff must prove: (1) the defamatory character of the communication; (2) publication by the defendant; (3) its application to the plaintiff; (4) understanding by the recipient of its defamatory meaning; (5) understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm to the plaintiff; and (7) abuse of a conditionally privileged occasion.
>
> When relevant to the defense, the defendant has the burden of proving (1) the truth of the defamatory communication; (2) the privileged character of the occasion on which it was published; and (3) the character of the subject matter of defamatory comment is of public concern.
>
> Depending upon the importance of the publisher's actions to society, the privilege may be absolute or conditional/qualified.

***Miketic v. Baron***, 675 A.2d 324, 327 (Pa.Super. 1996) (citing 42 Pa.C.S.A.

§ 8343(a), (b)) (citations, quotations, quotation marks, and footnote

omitted).

> Liability for publication of defamatory matter may be defeated by a privilege to publish the defamation. One who publishes defamatory matter within the scope of an absolute privilege is immune from liability regardless of occasion or motive. However, such a privilege may be lost if the publisher exceeds the scope of his privilege by publishing the defamation to unauthorized parties.

***Davis v. Resources for Human Development, Inc.***, 770 A.2d 353, 358

(Pa.Super. 2001) (quotation and quotation marks omitted). "Whether a

particular statement is absolutely privileged is a question of law for the court."

***Pawlowski v. Smorto***, 588 A.2d 36, 41 (Pa.Super. 1991) (citation omitted).

In the case *sub judice*, we examine the trial court's conclusion that the King Shooter Supply employees had an absolute privilege to call the local police and suggest that Appellant was in need of psychiatric intervention.[8]

Initially, as our Supreme Court recognized:

> Pennsylvania law closely guards the ability of a person whose reputation has been injured by defamatory statements to obtain redress for such injury….At the same time, there is a fundamental societal need for justice to be administered freely and efficiently through the eliciting of speech from parties and witnesses that may be accusatory or otherwise reflect negatively upon another's character. Thus, notwithstanding any reputational harm that may ensue, Pennsylvania, like many other jurisdictions, recognizes a judicial privilege providing immunity for communications which are made in the regular course of judicial proceedings and are material to the relief sought. The privilege covers statements by a party, a witness, an attorney, or a judge. Furthermore, the privilege is absolute, meaning that, where it attaches, the declarant's intent is immaterial even if the statement is false and made with malice.
>
> The judicial privilege serves an essential function in guaranteeing access to the courts and permitting the free articulation and resolution of legal claims. Hence, its purpose is to allow participants in judicial proceedings to speak freely without fear of civil liability.

*Schanne v. Addis*, 632 Pa. 545, 121 A.3d 942, 946-47 (2015) (citations and footnotes omitted).

> The reasons for the absolute privilege are well recognized. A judge must be free to administer the law without fear of consequences. This independence would be impaired were he to be in daily apprehension of defamation suits. The privilege is also extended to parties to afford freedom of access to the courts, to

---

[8] In light of our discussion *infra*, we find it unnecessary to determine whether the statements made by the King Shooter Supply employees to the local police were defamatory in nature under 42 Pa.C.S.A. § 8343(a).

witnesses to encourage their complete and unintimidated testimony in court, and to counsel to enable him to best represent his client's interests. Likewise, the privilege exists because the courts have other internal sanctions against defamatory statements, such as perjury or contempt proceedings.

***Miketic***, 675 A.2d at 328 (quotation and citations omitted).

"Importantly, the existence of the privilege does not depend upon the motive of the defendant in making the allegedly defamatory statement. The privilege is absolute and cannot be destroyed by abuse."[9] ***Marino v. Fava***, 915 A.2d 121, 124 (Pa.Super. 2006) (quotation omitted) (footnote added). Moreover, the privilege is not limited to statements made in open court, but encompasses pleadings as well. ***See Schanne***, ***supra***. This Court has extended the privilege further to "even less formal communications such as preliminary conferences and correspondence between counsel in furtherance of the client's interest." ***Pawlowski***, 588 A.2d at 41.

Additionally, in ***Pawlowski***, ***supra***, in consideration of the policies underlying the judicial privilege, we extended the privilege to statements

---

[9] An absolute privilege may be lost through over-publication, *i.e.* publication of the defamatory material to unauthorized persons. ***See Agriss v. Roadway Exp., Inc.***, 483 A.2d 456, 463 (Pa.Super. 1984). "In the case of the judicial privilege, over-publication may be found where a statement initially privileged because made in the regular course of judicial proceedings is later republished to another audience outside of the proceedings." ***Pawlowski***, 588 A.2d at 41 (citation omitted).

In the case *sub judice*, the employees' statements were made to local police, who then apparently repeated the statements to mental health hospital officials. In light of the precedent discussed *infra*, this did not constitute "over-publication." ***See id.***

made to the police, as well as to the district attorney. We specifically held "the scope of the absolute judicial privilege...applies to private parties involved in providing information to the proper authorities in connection with the suspected commission of a crime." *Id.* at 42. In this vein, we reasoned:

> As stated above, according absolute privilege to statements made in or preliminary to judicial proceedings aim at ensuring free and uninhibited access to the judicial system. This policy is obviously served by application of the privilege to statements made solely to law enforcement officials for the purpose of initiating criminal charges. Although such statements may ultimately prove to be false or maliciously motivated, the same may be said of statements made by a party who consults with his or her attorney preliminary to instituting a civil action, or of statements made by counsel in preliminary conferences or negotiations on their client's behalf. Nevertheless, such statements are deemed to be absolutely privileged because the policy concerns stated above outweigh the right of the defamation plaintiff to seek redress for harm caused by the statements.

*Id.* at 42 (citation omitted). Accordingly, in *Pawlowski*, we accorded absolute privilege to the statements, which amounted to an accusation of a crime, made to law enforcement officials. *Id.*

Additionally, in *Marino*, *supra*, this Court examined the absolute privilege in connection with statements made to the police and mental health officials regarding the involuntary commitment of the plaintiff. Specifically, in *Marino*, the plaintiff's uncle reported to the police that the plaintiff had "pulled a gun on him" and, in response to the police's suggestion, the uncle "filled out an application to have [the plaintiff] involuntarily committed[.]" *Id.* at 122.

In holding the uncle's statements to the police and mental health officials were accorded an absolute privilege, this Court concluded the uncle

"was nothing more than a witness in [the plaintiff's] involuntary commitment proceeding." *Id.* at 124. Specifically, we held that just as the statements made in *Powlowski*, which accused the plaintiff of a crime, were absolutely privileged, so too were the statements the uncle in *Marino* made to the police and mental health officials regarding the initiating of involuntary commitment proceedings against the plaintiff. We noted that, "[a]lthough such statements may ultimately prove to be false or maliciously motivated, they are deemed to be absolutely privileged because the policy concerns…outweigh the right of the defamation plaintiff to seek redress for alleged harm caused by the statements." *Marino*, 915 A.2d at 124 (citation omitted).

Similarly, in the case *sub judice*, we conclude the statements the King Shooters Supply employees made to the police suggesting "that [Appellant] was in need of psychiatric intervention"[10] were absolutely privileged. As the trial court indicated, "Pennsylvania's policy concerns outweighs the right of [Appellant] to seek redress." Trial Court Opinion, filed 5/14/19, at 3. Thus, accepting as true all well-pleaded allegations in Appellant's complaint, we conclude the King appellees were immune from Appellant's slander claim.[11]

_____

[10] *See* Appellant's Complaint at ¶ 12.

[11] In *Mamalis v. Atlas Van Lines, Inc.*, 522 Pa. 214, 560 A.2d 1380, 1382 (1989), the Supreme Court held that "[a] claim of vicarious liability is inseparable from the claim against the agent since any cause of action is based on the acts of only one tortfeasor." In the case *sub judice*, the King Shooter Supply employees' statements were protected by an absolute privilege;

***See Tucker***, ***supra***; ***Marino***, ***supra***.  Accordingly, the trial court did not err in granting the King appellees' motion for judgment on the pleadings.

For all of the aforementioned reasons, we affirm.

Affirmed.


Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/25/20

---

accordingly, the corporate King appellees cannot be vicariously liable for the protected statements.