J-A02002-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| NEPTUNE-BENSON, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BIO UV SAS | : | |
| | : | |
| Appellant | : | No. 594 WDA 2020 |

Appeal from the Order Entered May 8, 2020
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD-18-014821

BEFORE:  BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.:                    **FILED: MAY 13, 2021**

Bio UV SAS appeals from the order that granted the motion for partial judgment on the pleadings filed by Neptune-Benson, LLC, in this action for breach of contract and declaratory judgment.[1]  We affirm.

---

[1] Specifically, the appealed-from order grants judgment as a matter of law only on Count I of the complaint, which sought declaratory judgment pursuant to 42 Pa.C.S. §§ 1731-1741.  The order does not resolve Counts II through IV, which state claims of breach of contract and seek compensatory damages.  Thus, the order was not immediately appealable as a final order under Pa.R.A.P. 340(b)(1) (defining a final order as one disposing of all claims and all parties) or Pa.R.A.P. 311(a)(8) in conjunction with 42 Pa.C.S. § 7532 (providing that a court's declaration of the rights of parties has the force of a final judgment).  ***See Schmitt v. State Farm Mut. Auto. Ins. Co.***, 245 A.3d 678, 686 (Pa.Super. 2021) (quashing as interlocutory an order disposing only of declaratory judgment claims where the complaint alleged both "ordinary civil relief and remedies in the form of a declaration of coverage and damages").  However, the trial court entered its order in accordance with Pa.R.A.P. 341(c) (permitting a trial court to enter an interlocutory order as a

The trial court offered the following summary of this case:

> Neptune-Benson, LLC ("[Neptune]") supplies water treatment products for recreational facilities. Delta Ultraviolet Corporation ("Delta UV") designs, manufactures and sells ultraviolet water treatment and disinfectant equipment for residential and semi-commercial uses.
>
> On August 3, 2016, [Neptune] purchased all of the issued and outstanding shares of Delta UV from the French corporation Bio UV SAS ("[Bio UV]") pursuant to a Stock Purchase Agreement (the "Agreement"). The Agreement specifies that it is governed by, and construed in accordance with[,] the laws of New York.
>
> Section 7.2(d) of the Agreement specifically states that [Bio UV] shall
>
>> . . . defend, indemnify, and hold [Neptune] . . . harmless from and against any and all Claims or Losses that may be imposed upon, incurred by or asserted against [Neptune] arising out of based upon or resulting from: . . . (d) any Claims, including product liability Claims, arising out of based upon or relating to [Delta UV or its] Business . . . for the periods prior to the Closing Date, whether or not incurred prior to the Closing Date.
>
> Section 9.10 contains definitions of certain terms within the Agreement. The term "claim" is specifically defined as "any written or oral demand, claim, complaint, suit, action, cause of action, investigation, proceeding, or notice by any Person alleging actual or potential Liability for any Loss, or for any default under any law, contract . . . or other instrument or agreement . . . ." The Agreement further states:
>
>> "Losses" means, with respect to any event or circumstance, including a Third Party Claim, any and all Liabilities . . . including reasonable attorneys',

---

final order upon determination that an immediate appeal would facilitate resolution of the entire case under certain enumerated conditions). Therefore, Pa.R.A.P. 341(b)(3) (defining a final order to include orders entered pursuant to Pa.R.A.P. 341(c)) provides the basis for our jurisdiction over this appeal.

experts' and accountants' fees, expenses and disbursements, consequential damages and court costs in connection with any of the foregoing, incurred by a Person in connection with such event or circumstances.

On February 27, 2018, MAAX Spas Industries Corporation ("MAAX") addressed to [Neptune] a Notice of Claim (the "MA[A]X claim") in which it asserted that it had purchased defective ultraviolet generators from Delta UV. MAAX is the manufacturer of hot tubs and swim spas and has used Delta UV's ultraviolet generators in its products since at least 2009.

MA[A]X claimed that the defective ultraviolet generators caused damage to its products such that it had to issue a voluntary recall for spas manufactured between 2012 and 2014 at the recommendation of the United States Consumer Product Safety Commission. MAAX further asserted that [Neptune] was liable for all damages and informed [Neptune] that it was prepared to take swift action, including filing a lawsuit.

[Neptune] subsequently retained counsel and an expert to investigate and respond to the MA[A]X claim. [Neptune] forwarded notice of the MA[A]X claim to [Bio UV] on May 21, June 5 and July 26, 2018 demanding that it defend, indemnify and hold [Neptune] harmless against the MAAX claim pursuant to Section 7.2(d) of the Agreement. At the time the complaint was filed, [Bio UV] had failed to defend, indemnify, or hold [Neptune] harmless against the MAAX claim.

[Neptune] initiated this action on November 13, 2018, seeking a declaratory judgment that, pursuant to Section 7.2(d) of the Agreement, [Bio UV] has the obligation to defend, indemnify, and hold [Neptune] harmless against the MAAX claim.

[Neptune] also brought claims for breach of warranty, breach of contract, and breach of the implied covenant of good faith and fair dealing seeking compensatory damages.

In its answer and new matter, [Bio UV] raised certain affirmative defenses, including, based on the parol evidence rule, the doctrine of accord and satisfaction, estoppel, laches, waiver, the applicable statute of limitations and the applicable contractual limitations period under Section 7.1(a) of the Agreement.

On February 2, 2020, [Neptune] moved for partial judgment on the pleadings, asserting that only a single issue remained in dispute. [Neptune] asked the court to determine as a matter of law whether the MAAX claim is a "claim" within the meaning of Section 7.2(d) and 9.10 of the Agreement such that [Bio UV] must defend, indemnify, and hold [Neptune] harmless against it.

On May 8, 2020, the court entered an order granting [Neptune]s motion for partial judgment on the pleadings after finding that the MA[A]X claim falls under Section 7.2(d) of the Agreement. The court subsequently granted [Bio UV]'s application for determination of finality, allowing it to appeal the May 8, 2020 order now at issue.

Trial Court Opinion, 7/29/20, at 1-3 (cleaned up).

Bio UV presents the following questions for our consideration:

[1.] Whether the trial court erred in ordering [Bio UV] to indemnify [Neptune] (A) because Neptune did not meet its burden to show that it incurred a loss or liability; (B) because, if the court had accepted Bio UV's denials and affirmative defenses as true as the court was required to do, the court could not have found that Neptune met its burden to show that any alleged loss or liability would fall within the limitations of the contractual indemnity obligation or that Neptune had substantially performed its own obligations; and (C) because there is no basis for specific performance.

[2.] Whether the trial court erred in requiring Bio UV to defend Neptune (A) because there is no underlying lawsuit to defend; (B) because Bio UV's duty to defend is no broader than its duty to indemnify where Bio UV never agreed to be . . . an insurer of Neptune; and (C) because, if the court had accepted Bio UV's denials and affirmative defenses as true as the court was required to do, the court could not have found that Neptune met its burden to show that any alleged loss or liability would fall within the limitations of the contractual indemnity obligation.

Bio UV's brief at 5-6.

We begin with a review of the applicable legal principles:

> Entry of judgment on the pleadings is permitted under Pa.R.C.P. 1034[,] which provides for such judgment after the pleadings are closed, but within such time as not to delay trial. A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. In determining if there is a dispute as to facts, the court must confine its consideration to the pleadings and relevant documents. The scope of review on an appeal from the grant of judgment on the pleadings is plenary. We must determine if the action of the court below was based on clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury.

*Forbes v. King Shooters Supply*, 230 A.3d 1181, 1187 (Pa.Super. 2020) (internal quotation marks omitted).[2]

As noted above, the trial court granted judgment on the pleadings to Neptune only on its claim for declaratory judgment. "[T]he purpose of the Declaratory Judgments Act is to afford relief from uncertainty and insecurity with respect to legal rights, status and other relations." *Juban v. Schermer*, 751 A.2d 1190, 1193 (Pa.Super. 2000) (cleaned up). It was enacted "to curb the courts' tendency to limit the availability of judicial relief to only cases where an actual wrong has been done or is imminent." *Bayada Nurses, Inc. v. Com., Dep't of Labor & Indus.*, 8 A.3d 866, 874 (Pa. 2010). Here, the question is whether, construing the Agreement under New York law, Neptune

---

[2] As noted in the trial court's opinion, the parties' contract provides that New York law applies to the substantive issues in the case. *See* Agreement, 8/3/16, at ¶ 9.6. Nonetheless, we apply Pennsylvania procedural law, including the law governing our scope and standard of review. *See*, *e.g.*, *ADP, Inc. v. Morrow Motors Inc.*, 969 A.2d 1244, 1247 n.2 (Pa.Super. 2009).

- 5 -

was entitled to a declaration that Bio UV had a legal duty to indemnify Neptune in relation to the MAAX claim.

New York law provides familiar rules of construction for indemnification agreements. "The right of a party to recover indemnification on the basis of a contractual provision depends on the intent of the parties and the manner in which that intent is expressed in the contract." *Suazo v. Maple Ridge Associates, L.L.C.*, 924 N.Y.S.2d 378, 379 (N.Y. App. Div. 2011) (citation omitted). "It is well established that an indemnification agreement must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." *Cty. of Saratoga v. Delaware Eng'g, D.P.C.*, 139 N.Y.S.3d 381, 383 (N.Y. App. Div. 2020) (cleaned up). Nonetheless, "[a] contract that provides for indemnification will be enforced so long as the intent to assume such role is sufficiently clear and unambiguous." *Suazo*, *supra* at 379 (citation omitted).

"Words in a contractual indemnification provision are to be construed to achieve the apparent purpose of the parties." *Arrendal v. Trizechahn Corp.*, 950 N.Y.S.2d 187, 189 (N.Y. App. Div. 2012) (cleaned up). "A written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Friedman v. Goldstein*, 189 A.D.3d 1183, 138 N.Y.S.3d 535, 539 (N.Y. App. Div. 2020) (cleaned up). Further, the "contract should be read as a harmonious and integrated whole so as to give effect to its purpose and intent, and must be

construed in a manner which gives effect to each and every part, so as not to render any provision meaningless or without force or effect." ***HTRF Ventures, LLC v. Permasteelisa N. Am. Corp.***, 190 A.D.3d 603, 607 (N.Y. App. Div. 2021) (cleaned up).

Mindful of the stated legal principles, we turn to Bio UV's arguments. Since Bio UV essentially makes the same attacks upon both the trial court's rulings as to defense and to indemnification, we address its questions together.[3] First, Bio UV asserts that it is not clear from the pleadings that any duty it owes Neptune pursuant to ¶ 7.2 has been triggered by "nothing more than the allegations made by a third party," which have not yet resulted in any lawsuit, let alone a payment to a third party indemnifiable amounting to a "loss." ***See*** Bio UV's brief at 12, 15. It maintains that the trial court's ruling was premature, as "Neptune's potential, future claims here are a matter of conjecture at best." ***Id***. at 20. Consequently, because a contractual duty to defend is no broader than the concomitant duty to indemnify, unlike in the insurance context where the duty to defend is broad, Bio UV's duty to defend also is not triggered until Neptune has realized a loss in the form of an obligation to make a payment to MAAX. ***Id***. at 54-65.

_____

[3] Indeed, in making its argument concerning the duty defend, Bio UV in part merely incorporates by reference its argument as to the duty to indemnify. ***See*** Bio UV's brief at 65.

Bio UV supports its argument with discussion of numerous New York federal and state decisions. *See*, *e.g.*, *id*. at 18 (quoting **Katzman v. Helen of Troy Texas Corp.**, 12 CIV. 4220 PAE, 2012 WL 3831745, at *3 (S.D.N.Y. Aug. 28, 2012) ("It is well-settled that under an agreement to indemnify against loss, a right to indemnification does not accrue until the indemnified party has satisfied the judgment, *i.e.*, suffered a loss." (cleaned up)); **id**. at 54-58 (discussing **Dresser-Rand Co. v. Ingersoll Rand Co.**, 14 CIV. 7222 KPF, 2015 WL 4254033, at *6 (S.D.N.Y. July 14, 2015) ("As an indemnitor, defendant is not an insurer, and in that context its duty to defend is no broader than its duty to indemnify." (cleaned up)).

However, the cases upon which Bio UV relies do not alter the basic premise that the scope of a contracting party's duties are defined by the terms of the contract itself. *See*, *e.g.*, **Dresser-Rand**, **supra** at *7 ("[T]he breadth of a non-insurer's contractual defense obligations is defined solely by the terms of the contract, strictly construed.").

Noticeably absent from Bio UV's argument is any recitation of the actual language of the Agreement *sub judice*, or any discussion of whether or how the terms of the contracts in the cited cases upon which it relies are materially indistinguishable from those of its contract with Neptune.[4]   Contrary to Bio

_____

[4] Bio UV merely states in a footnote that "[t]he indemnification language in the [Agreement] is largely indistinguishable from language found throughout the case law."  Bio UV's brief at 21 n.1.  *See also id*. at 33 ("The language at

UV's arguments, our review of the language to which it agreed to be bound supports the trial court's declaration that the MAAX claim notice constitutes a "Claim" triggering Bio UV's obligations to defend and indemnify.

The Agreement is expressly the complete agreement between the parties, with a closing date of August 3, 2016. *See* Agreement, 8/3/16, at ¶ 9.3. The Agreement's stated purpose is to effectuate the transfer of 100% of the shares of Delta UV from Bio UV to Neptune, subject to the terms and conditions of the Agreement, in exchange for Neptune's payment of the Purchase Price. *Id*. at ¶¶ 1.1, 2.1. Article VII of the Agreement, titled "Indemnification," contains separate provisions delineating subjects of seller (Bio UV) indemnification, purchaser (Neptune) indemnification, and tax indemnification. Section 7.2 states Bio UV's indemnification obligations as follows:

> [Bio UV] shall defend, indemnify and hold [Neptune] and each of its directors, managers, officers, employees, affiliates, agents, stockholders, members, successors and assigns and representatives and each Person who controls any of them (the "Purchaser Indemnitees") harmless from and against any and all Claims or Losses that may be imposed upon, uncured by or asserted against any Purchaser Indemnitee arising out of, based upon or resulting from:
>
> > (a) any inaccuracy or breach of any representation or warranty of [Bio UV] contained in this Agreement or any other Transaction Document;

---

issue in [the cited] cases was substantially the same as the [Agreement] here."). While the language requiring indemnification for claims and/or losses is fairly consistent, Bio UV points to no other case in which the definition of "Claim" is as broad as the instant one, which we discuss more fully *infra*.

(b) any breach or nonfulfillment of any covenant or agreement of [Bio UV] contained in this Agreement or any Transaction Document;

(c) any breach by any officer or director of [Delta UV] of any fiduciary duty owed by such officer or director to [Bio UV] or [Delta UV], which breach occurred prior to, in connection with or as a result of the Closing and the Contemplated Transactions;

(d) any Claims, including product liability Claims, arising out of, based upon or relating to the Business or [Delta UV] for the periods prior to the Closing Date, whether or not incurred prior to the Closing Date;

(e) any obligation of [Bio UV] to pay any amount pursuant to Section 2.2(d) [regarding enumerated pre-closing Delta UV transaction expenses];

(f) to the extent exceeding the "allowance for doubtful accounts" accrued in the Interim Balance Sheet, any amount of uncollected Accounts Receivable reflected on the Interim Balance Sheet which is more than ninety (90) calendar days past due;

(g) any Legal Proceedings outstanding as of, or arising out of facts, circumstances or events occurring or existing prior to, the Closing; and

(h) any Third Party Claim relating to any of the foregoing.

*Id*. at ¶ 7.2 (line breaks added).

The term "the Business" is elucidated at the outset of the Agreement, which states by way of background that Delta UV "is in the business of designing, manufacturing, marketing and selling ultraviolet (UV-C) water treatment and disinfection equipment and related spare parts for the residential, semi-commercial, and commercial pool and spa markets in the

United States and worldwide ('the Business')." *Id*. at 1. Some, but not all, of the other capitalized terms are defined within ¶ 9.10 of the Agreement. Of particular note, "Claim" is broadly defined as:

> any written or oral demand, claim, complaint, suit, action, cause of action, investigation, proceeding or notice by any Person alleging actual or potential Liability for any Loss, or for any default under any law, Contract, Permit, Employee Benefit Plan or other instrument or agreement, including any written or oral demand, claim, complaint, suit, action, cause of action, investigation, proceeding or notice which may be subject to errors and omissions (or similar) insurance or otherwise relate to the professional competence of the Company's employees.

*Id*. at ¶ 9.10. "Liabilities" are "without limitation, any direct or indirect liability, Indebtedness, guaranty, endorsement, Claim, loss, damage, deficiency, cost, expense, obligation or responsibility, fixed or unfixed, known or unknown, asserted or unasserted, choate or inchoate, liquidated or unliquidated, secured or unsecured." *Id*. A "Legal Proceeding" is defined as "any audit, Claim or legal, administrative or other similar proceeding by or before any governmental entity (including any self-regulating organization) or arbitration or alternative dispute resolution panel." *Id*. The term "Losses"

> means, with respect to any event or circumstance, including a Third Party Claim, any and all Liabilities, Encumbrances, penalties, fines, settlements, or Claims, including reasonable attorneys', experts' and accountants' fees, expenses and disbursements, consequential damages and court costs in connection with any of the foregoing, incurred by a Person in connection with such event or circumstance.

*Id*. The term "Third Party Claim" is not separately defined.

- 11 -

Hence, Bio UV agreed to both defend and indemnify not just fully-realized Losses, but any and all Claims arising from Delta UV's pre-closing design, manufacture, marketing, and sales of UV equipment. Bio UV's suggestion that the MAAX letter is not a Claim because no litigation had yet commenced, and Neptune has not yet been found liable or paid a judgment, serves to negate the separate and distinct definitions set for the terms "Claim," "Loss," and "Legal Proceedings." Such an interpretation is directly contrary to the rule of construction requiring us to interpret the Agreement "in a manner which gives effect to each and every part, so as not to render any provision meaningless or without force or effect." *HTRF Ventures*, *supra* at 607 (cleaned up). *Accord Madeira v. Affordable Hous. Found., Inc.*, 323 Fed.Appx. 89, 91 n.1 (2d Cir. 2009) (holding that construing term requiring indemnification of a "claim" to be the same as for a "loss" would be superfluous where "the parties' agreement already indemnifies against 'losses,'"; distinguishing case construing an agreement requiring indemnification for "any claim or demand" to require indemnification against a "loss" because that contract never mentioned "loss").

If Bio UV was willing only to defend Legal Proceedings and to indemnify Losses, it could have negotiated contractual terms to that effect. The Agreement that it entered, however, was not so limited. According to the plain meaning of the language of ¶¶ 7.2 and 9.10 of the Agreement, Bio UV undertook a broad obligation to defend and indemnify Neptune's expenses

and enumerated professional fees for Claims as nascent as notice of a potential Loss. The trial court properly construed the language of the agreement as written. *See Dresser-Rand*, *supra* at \*7 ("If a contractual defense obligation is, by its own terms, exceedingly broad, a court will not artificially circumscribe it."). *See also Di Perna v. Am. Broad. Companies, Inc.*, 612 N.Y.S.2d 564, 566 (N.Y. App. Div. 1994) (holding duty to indemnify for "all liability, damage, loss, claims, demands and actions which arise or are claimed to arise out of or be connected with any accident or occurrence which happens, or is alleged to have happened" attached even where indemnitee had been found to be not liable in the third-party action).

Pursuant to both New York and Pennsylvania law, where there exists an agreement for one party to defend against the potential liability of another, there is no need for liability to be established before declaratory judgment is sought. *Compare Barnes v. New York City Hous. Auth*., 841 N.Y.S.2d 379, 381 (N.Y. App. Div. 2007) (holding finding against Sears in third-party claim was not required before ruling as a matter of law that indemnification was required by the contract in which the flooring installer agreed "to protect and indemnify Sears from all claims or demands on account of injury to persons or property occurring as a result of said installation" (cleaned up)), *with Cody v. Gaynes*, 110 N.Y.S.2d 633, 635 (N.Y. App. Div. 1952) (affirming dismissal of claim for breach of a contract that provided for indemnification where no damages had yet been sustained by the plaintiff).

*See also Erie Ins. Exch. v. Lobenthal*, 114 A.3d 832, 836 (Pa.Super. 2015) (reiterating that duties to defend and indemnify may be fully litigated in a declaratory judgment action before the underlying claim is resolved).

In arguing that the pleadings do not conclusively establish that ¶ 7.2 of the Agreement has been triggered, Bio UV additionally contends that a question of fact exists as to whether the allegations in the MAAX letter are attributable to Bio UV's pre-closing business, rather than Neptune's post-closing negligence in maintaining the relationship with the customer. *Id*. at 24-25, 58-59. Since in its answer to Neptune's complaint Bio UV specifically denied that the liability Neptune faces arises from pre-2016 Delta UV Business, Bio UV maintains that judgment on the pleadings was improperly granted. *See*, *e.g.*, Bio UV's brief at 28.

The trial court addressed this aspect of Bio UV's argument as follows:

[T]he MA[A]X claim clearly arises out of [Bio UV's] business of designing, manufacturing and selling ultraviolet generators that were used in MA[A]X's products. Section 7.2(d) does not require that [Neptune] suffer any loss. Instead, it requires that [Neptune] is actually or potentially liable for a loss suffered by a third-party. That is exactly what we have here.

MA[A]X is claiming that Delta UV is liable for damages caused by defective ultraviolet generators that it designed, manufactured and sold between 2012 and 2014, which is prior to the August 3, 2016 Closing Date. It is irrelevant whether or not the claim [was] incurred prior to the Closing Date. [Bio UV]'s factual assertion that the MAAX claim may have been caused by events or circumstances after the Closing Date does not change the analysis. The MA[A]X claim still arises out of, is based upon and/or relates to defective ultraviolet generators that were installed in MA[A]X products by 2012.

- 14 -

Trial Court Opinion, 7/29/20, at 6.

Upon review of the certified record, we are not persuaded that "there were facts disclosed by the pleadings which should properly go to the jury" as to Neptune's declaratory judgment claim. ***Forbes***, ***supra*** at 187. As noted above, in evaluating whether there is a factual dispute, we "must confine [our] consideration to the pleadings and relevant documents." ***Id***.

An examination of the pleadings and relevant documents reveals the following. In its complaint, Neptune alleged that MAAX sent Neptune a notice of claim concerning incidents concerning Delta UV generators installed in MAAX spas that were manufactured in 2012.[5] ***See*** Complaint, 11/13/18, at ¶¶ 18-22. In its declaratory judgment count, Neptune averred that ¶ 7.2 of the Agreement required Bio UV to defend, indemnify, and hold Neptune harmless for the claims, that BIO UV has refused to do so, and that declaratory relief from the court would terminate the parties' dispute about Bio UV's duties. ***Id***. at ¶¶ 44-47. Neptune attached the MAAX claim letter, as well as pertinent portions of the Agreement, to the complaint. ***See*** Complaint, 11/13/18, at Exhibits A, B.

Bio UV responded to Neptune's declaratory judgment allegations by (1) indicating that the MAAX claim notice document speaks for itself; (2) denying

---

[5] The letter from MAAX's counsel is addressed to Evoqua Water Technologies Corp. rather than to Neptune. ***See*** Complaint, 11/13/18, at Exhibit B. However, Neptune's complaint explains that it had become a wholly-owned subsidiary of Evoqua. ***Id***. at 7 n.1.

that it has refused to defend and indemnify Neptune; (3) denying that there is any actual controversy; and (4) denying "that any claims have been asserted against [Neptune] that arose out of Delta UV's Business prior to the closing date. To the contrary, the alleged claim arose in late 2017." Answer and New Matter, 3/12/19, at ¶¶ 20-24, 44-46.

The MAAX letter indicates that it had been made aware of several 2017 incidents in the United States involving "defective generators in 2012 Spas" supplied by Delta UV. MAAX Notice of Claim Letter, 2/27/18, at 1. It further detailed that these incidents appeared to be similar to "earlier incidents involving Delta UV's UV generators, which occurred in Canada." *Id*. Based upon the recommendations of U.S. Consumer Product Safety Commission, MAAX "agreed that its retailers will repair consumers' Delta UV . . . generators installed in Spas manufactured by MAAX Spas **between 2012 and 2014**[.]" *Id*. at 2 (emphasis added). The claim notice further alleges that "[i]t is clear that the defects within the UV generators existed when the generators were produced by Delta UV, and as a result, liability for all the associated damages lies with [Neptune]." *Id*.

Plainly, the pleadings and relevant documents reveal that MAAX is asserting a Claim that arises from Delta UV's Business prior to the August 3, 2016 Closing Date set forth in the Agreement. While the underlying allegations are yet unproven, and a Loss in the form of a judgment will not necessarily be realized, the MAAX notice of claim nonetheless exposes

Neptune to a potential Loss for Delta UV's pre-Closing Date business, and requires a legal defense entailing indemnifiable costs and fees.[6] Thus, the factual assertions were sufficient to trigger Bio UV's defense and indemnification duties under ¶ 7.2, given our earlier conclusion that the provision applies when there is notice "alleging actual **or potential**

_____

[6] In this Court, Bio UV discusses information disclosed not in the pleadings, but in discovery, which suggest Delta UV's pre-closing activities were not to blame for the incidents identified by MAAX. For example, Bio UV asserts:

- Delta UV had assisted MAAX with certain other investigations and had concluded based on inspections of the site or of photos that the fires had originated outside the Delta UV units.

- Delta UV tested its units to determine whether water infiltration or a spark inside the unit could have been a cause, and the results demonstrated no possible cause of ignition inside the Delta UV units.

- MAAX's investigations involved the same distributor in Quebec and units that had been installed years before, therefore suggesting improper installation or maintenance may be the cause.

- Bio UV understands that after the above described testing and investigation, MAAX agreed that Delta UV's generators were not at fault.

- MAAX and Delta UV agreed upon a solution which primarily involved changes in the installation process at MAAX.

*Id*. at 32. This information neither serves as a defense to Neptune's declaratory judgment action, nor suggests that Neptune is to blame for the incidents identified by MAAX. Rather, this intimate knowledge Bio UV has of Delta UV's pre-2016 history with MAAX suggests that Bio UV knows precisely how to defend against MAAX's claims.

Liability[.]" Agreement, 8/3/16, at ¶ 9.10 (emphasis added). The trial court did not err in concluding that judgment on the pleadings on the declaratory judgment claim was warranted.

Bio UV's remaining arguments concern the trial court's alleged award of specific performance. For example, Bio UV contends that Neptune was not entitled to judgment on the pleadings because there is a dispute whether Neptune performed all of its contractual obligations, a necessary prerequisite to specific performance.[7] *See* Bio UV's brief at 39-41. Additionally, Bio UV

_____

[7] Bio UV also asserts that Neptune's alleged failure to fulfill its own contractual obligations is relevant not only to damages, but also "potentially relieves Bio UV of its obligations." Bio UV's brief at 43. However, the cases upon which it relies pertain to actions for breach of contract, not for declaratory judgment. *See id*. (citing *Republic Corp. v. Procedyne Corp.*, 401 F. Supp. 1061, 1069 (S.D. N.Y. 1975) ("Plaintiff cannot maintain an action for breach of contract until it has proved by a fair preponderance of the credible evidence that it is free from fault with respect to performance of its part of the agreement."). Here, Neptune sought, and the trial court granted, judgment on the pleadings only as to Neptune's declaratory judgment count. Its claims for breach of contract were not adjudicated in the order presently on appeal.

Relatedly, Bio UV argues that it "represented to the trial court" that it has a spoliation defense which not only may preclude a specific performance remedy, but could wholly defeat Neptune's claim. *See* Bio UV's Brief at 45. The trial court noted that Bio UV did not raise spoliation in its pleading, but presented it only in replying to Neptune's motion for judgment on the pleadings. *See* Trial Court Opinion, 7/29/20, at 8. Bio UV responds that it first learned of the spoliation issue during discovery, that the allegations were not a surprise to Neptune, and that the trial court should have accepted the unpled allegations as true for purposes of ruling on Neptune's motion rather than "preclud[ing] Bio UV from proving this defense or any of its other affirmative defenses." Bio UV's brief at 47, 50. However, as Neptune aptly observes, Bio UV did not request to amend its pleading to include the new allegations. *See* Neptune's brief at 29 n.65. Accordingly, the unpled

- 18 -

argues that the equitable remedy of specific performance is inappropriate because Neptune has an adequate remedy at law. *Id*. at 51-52. Therefore, Bio UV maintains, "to the extent the trial court granted specific performance, the court committed error." *Id*. at 52.

The trial court's order provides, in pertinent part, as follows:

> [I]t is HEREBY ORDERED, ADJUDGED and DECREED that [Neptune's] motion is granted and pursuant to Pa.R.Civ.Pro. 1034, judgment is entered in favor of [Neptune] on Count I for declaratory judgment set forth in the complaint. [Bio UV] is HEREBY ORDERED to perform its obligation in [§] 7.2 of the parties' [Agreement] to defend, indemnify, and hold [Neptune] harmless against the MAAX claim, as that claim is defined in the complaint.

Order, 5/8/20.

The trial court expressly disavowed having ordered specific performance:

> The court's May 8, 2020 [order] was not intended to grant specific performance.
>
> Instead, the court granted the motion for partial judgment on the pleadings in favor of [Neptune] on Count I for declaratory judgment pursuant to 42 Pa.C.S. §§ 7531 *et seq*., finding that, as a matter of law, [Bio UV] is obligated to defend, indemnify, and

---

spoliation allegations were not a proper consideration in ruling upon Neptune's motion. *See*, *e.g.*, *Forbes v. King Shooters Supply*, 230 A.3d 1181, 1187 (Pa.Super. 2020) ("In determining if there is a dispute as to facts, the court must confine its consideration to the pleadings and relevant documents." (internal quotation marks omitted)). Furthermore, the appealed-from order did not preclude Bio UV from pursuing a spoliation claim or any of its affirmative defenses that pertain not to the declaratory judgment count, but rather to Neptune's still-pending breach of contract claims. Therefore, Bio UV's spoliation argument merits no relief in this appeal.

hold [Neptune] harmless against the MAAX claim. The issue of damages and an appropriate remedy was held over for trial.

Trial Court Opinion, 7/29/20, at 9 (unnecessary capitalization omitted).

With the record now clear that trial court's order is merely a declaration of law, and not the entry of injunctive relief, any error on the part of the trial court in its choice of wording is harmless. It is henceforth the law of the case that the May 8, 2020 order did not require Bio UV to specifically perform its declared contractual obligations. Thus, there is no basis for this Court to grant Bio UV relief on its claim that specific performance was improperly ordered. *See*, *e.g.*, *Drew v. Work*, 95 A.3d 324, 337 (Pa.Super. 2014) ("An error is harmless if a party does not suffer prejudice as a result of the error." (cleaned up)).

Having concluded that none of Bio UV's issues merits relief, we affirm the trial court's order granting Neptune partial judgment on the pleadings.

Order affirmed.

Judge McLaughlin joins the memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  05/13/2021

- 20 -